UNITED STATES of America, Plaintiff,

v.

PRIVATE SANITATION INDUSTRY ASSOCIATION OF NASSAU/SUFFOLK, INC., Local 813 of the International Brotherhood of Teamsters, A–1 Carting Company, AA & M Carting Company, Ace Garbage & Rubbish Removal, Inc., All Weather Carting Corporation, Associated Waste Disposal Company, B & D Carting, Inc., Bonsera, Inc. d/b/a Star Carting Corp., Budget Roll–Off Systems, Inc., C & C Refuse Carting Corporation, Ciano and Sons Carting Co., Inc., Comet Carting Company, Daniel Finley Allen Co., Inc., Delta Carting Corporation, Dependable Sanitation Corp., Detail Carting, Enviro Carting Company d/b/a Island Carting Company, Ever Ready Sanitation Corporation, Harbor Carting Corp., Hickey's Carting, Inc., Hillside Carting Company, Inc., Jamaica Ash & Rubbish Removal Co., Inc., Long Island Rubbish Removal Corp., Maggio's M & P Carting Service, Inc., MCM Sanitation, Inc. d/b/a Island Carting Company, Metro Waste, Inc., Mets Roll–Off Service, Inc., Monbro Sanitation Service, Inc., Prudential Waste Disposal, Inc., Sail Carting & Recycling Corp., Salem Sanitary Carting Corporation, South Side Carting Co., Inc., SSC Corporation, Standard Commercial Cartage, Inc., Sun Carting, Inc., Sunset Sanitation Corp., Superior Waste Systems, Inc., TWA Carting Corporation, II Cousins Carting Corp., U–Need–A–Roll–Off Corporation, Unique Sanitation Corp., Vigliotti Brothers Carting Corporation, Vinnie Monte's Waste System, Inc., V & J Rubbish Removal, Inc., Wayside Carting, Inc., Michael Acquafredda, Bernard Adelstein, John Allen, Sarah Allen, James Allesandria, Vito Aniello, Salvatore Avellino, Jr., Joseph Bonsera, Michael Bonsera, Charles Cannizzaro, Richard Carey, Pasquale Casagrande, Richard Ciano, Raniero Colatosti, Craig Comerford, Antonio Corallo, James J. Corrigan, Jr., Edward DeMatteo, Ernest DeMatteo, Emedio Fazzini, Joseph Fer-

rante, Nicholas Ferrante, John Guglielmo, John Haynes, Dennis Hickey, Robert Husak, Jerome Kowalski, Vincent Maggio, Michael Malena, John Maratea, Peter Marcello, Anthony Miello, Anthony Montesano, Jr., Vincent Montesano, Anthony Natale, Frank Notarantonio, John Pagano, Frank Palopoli, Salvatore Palopoli, David Pamlanye, Steven Pamlanye, Ralph Pantony, Joseph Petrizzo, Joseph Pezza, Pasquale Pezza, Peter Reali, Robert Renna, Arthur Romersa, Thomas Ronga, Franco Rotundo, Salvatore Santoro, Robert Schuman, John Senia, Pat Sesti, Peter Stramiello, Glenn Thweatt, Orlando Velocci, Anthony Vespucci, Allen Vesting, Arnold Vigliotti, Glen Vilchek, Joseph Vittorio, Michael Walstrum, and James Winters, Defendants.

No. CV–89–1848.

United States District Court,
E.D. New York.

June 29, 1992.

Paul A. Batista, New York City, for Vincent Maggio, Unique Sanitation Corp., Maggio's M & P Carting, U–Need–A–Roll–Off Corp., Joseph Ferrante, Nicholas Ferrante, Bonsera, Inc., d/b/a Star, Joseph Bonsera, Michael Bonsera.

Fred P. Bennett, Woodbury, N.Y., for David Pamlanye, Steven Pamlanye.

Warren M. Berger, Commack, N.Y., for Ciano & Sons, Richard Ciano.

Judd Burstein, New York City, for Frank Notarantonio, Joseph Petrizzo, Robert Renna, Ace Garbage & Rubbish, Mets Roll–Off Service, Inc., Prudential Waste Disposal, TWA Sanitation, John Pagano.

Paul F. Corcoran, Speno, Goldman, Goldberg, Corcoran & Steingart, Mineola, N.Y., for Detail Carting, Thomas Ronga.

Richard H. Cunningham, Smithtown, N.Y., Kevin Fitzgerald, for Ever Ready Sanitation, Sun Carting, James Winters, Glen Vilchek.

Gallop Dawson & Clayman, New York City, for Salem Sanitary Carting, Salvatore Avellino, Michael Malena, SSC Corp.

Peter J. Driscoll, Kostelanetz, Ritholz, Tigue & Fink, New York City, for Private Sanitation, C & C Refuse Carting, Glenn Thweatt, Hickey's Carting, Inc., Dennis Hickey, Allen Vesting.

James Druker, Garden City, N.Y., for V & J Rubbish Removal, James Allesandria.

James T. Gucciardo, Huntington, N.Y., for Harbor Carting, Raniero Colotosti.

Arthur Goldstein, Goldstein & Rubinton, Huntington, N.Y., for Enviro Carting, MCM Sanitation, Charles Cannizzaro, Anthony Miello.

Leonard Halpern, Halpern & Zuckerman, Bay Shore, N.Y., for Comet Carting, John Maratea.

Hoffman & Pollok, New York City, for A.A. & M. Carting Service, Michael Acquafredda.

George Lasch, Moriches, N.Y., for Michael Walstrum.

Peter H. Mayer, Clayton & Mayer, Hauppauge, N.Y., for Richard Carey.

Richard Miller, Ronkonkoma, N.Y., for A-1 Carting, Joseph Pezza, Pasquale Pezza, Hillside Carting, Peter Reali.

Steven B. Nacht, Setauket, N.Y., for John Senia.

Gilbert T. Perlman, Great Neck, N.Y., for Long Island Rubbish.

John G. Poli, III, Raskin, Haas & Poli, Huntington, N.Y., for Pat Sesti.

Ronald G. Russo, Fischetti, Pomerantz & Russo, New York City, for Associated Waste Disposal, Dependable Sanitation, Vito Aniello, John Haynes, Anthony Natale, Metro Waste, Inc., Monbro Sanitation Service, Anthony Montesano, Jr., Peter Marcello, Standard Commercial, Robert Schuman.

Joseph W. Ryan, Jr., Uniondale, N.Y., for Vigliotti Carting, Arnold Vigliotti.

Laura Sapienza, Farrell, Fritz, Caemmerer, Cleary, Barnosky & Armentano, Uniondale, N.Y., for B & D Carting, South Side Carting, Robert Husak, Orlando Velocci.

Stephen P. Scaring, P.C., Mineola, N.Y., for Daniel Finley Allen, Co., Jamaica Ash, John Allen, Sara Allen, Emedio Fazzine, II Cousins Carting, John Guglielmo.

Gerald L. Shargel, New York City, for Sail Carting, Edward DeMatteo, Ernest DeMatteo.

Lark J. Shlimbaum, Shlimbaum & Shlimbaum, Islip, N.Y., for Budget Roll-Off, Sunset Sanitation, Superior Waste, Frank Palopoli, Salvatore Palopoli.

Karen Silverman, LaRossa, Mitchell & Ross, New York City, for Anthony Vespucci.

Barry I. Slotnick, Slotnick & Baker, New York City, for Local 813, Bernard Adelstein.

David Sutton, Garden City, N.Y., for Delta Carting, Ralph Pantony.

Jeffrey Waller, Huntington, N.Y., for Craig Comerford.

A. Jeffrey Weiss, Garden City, N.Y., for James J. Corrigan, Jr., Arthur Romersa, Vincent Montesano, Vinnie Monte's Waste Systems, Wayside Carting, Inc., Frank Rotundo.

David M. Nocenti, Asst. U.S. Atty., for plaintiff U.S.

MEMORANDUM AND ORDER

GLASSER, District Judge:

This is a civil action brought by the United States of America under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 et seq. ("RICO"). As filed, the complaint sets forth 47 claims for relief against 112 defendants who are alleged to have committed 486 acts of racketeering through 46 separate enterprises. In a transparent endeavor to lay claim to "the largest civil RICO case ever,"[1] the

---

1. Dan Fagin, "Lawyers for Long Island Carters Assail RICO Suit," *Newsday*, November 18, 1989, page 14.

government attorneys who drafted this complaint have multiplied defendants, enterprises, and predicate acts as though numbers were ends in themselves; and, yet, unfortunately, those draftsmen have also attempted to present the elements of their claims in the most summary form. The result—in derogation of the spirit of Federal Rule of Civil Procedure 8(a)—is a complaint that is neither "short" nor "plain." Indeed, at all too many points, the result is a complaint as to which persons "of common intelligence must necessarily guess at its meaning." Confronted with this obscure pleading, most of the defendants have moved to dismiss the complaint; for the reasons indicated below, their motions are granted in part and denied in part.

## FACTS

The facts that underlie this transaction are, for the purposes of this motion, assumed to be true as set out in the complaint. The government alleges that, for several decades, the solid waste disposal industry in the New York counties of Nassau and Suffolk has been "infiltrated, controlled, influenced, corrupted and run by organized crime." Complaint ¶ 1. The complaint states that the Lucchese Organized Crime Family of La Cosa Nostra and the Gambino Organized Crime Family of La Cosa Nostra have been the principal sources of such Mafia influence.[2] *Id.* According to the government, this "[c]ontrol of the industry by organized crime has eliminated competition and [has] cost the residents and [the] businesses of those counties millions of dollars." *Id.* Furthermore, the presence and the influence of the Mafia "has been accomplished through the use of threats and violence, through the infiltration and [the] control of labor unions, and through the bribery and [the] corruption of local government officials and employees." *Id.* Finally, "[m]embers and associates of organized crime families were and are directors, officers, employees

and ... shareholders of various carting companies" that do business in Nassau County and in Suffolk County. *Id.* ¶ 5.

The government alleges that the carting business on Long Island is conducted through an "illegal customer allocation agreement." *Id.* ¶ 7. No member of this cartel "seek[s] or accept[s] business from customers [allocated to] another carter who is a member of the cartel." *Id.* Additionally, the members of this cartel "rig" bids on public carting contracts. *Id.* ¶ 8. This "agreement among the carting companies and their principals is enforced by members and associates of organized crime families, and any attempt by rebel carters [that is, non-cartel carters] to compete for existing customers or [to] submit competitive bids is met with immediate threats of violence ... or [of] economic harm." *Id.* ¶ 9. In order to facilitate their illegal control of the carting industry, the cartel members corrupt public officials whose duties include the oversight of various aspects of the industry. *Id.* ¶ 15. And, in return for the power and the influence of the organized crime families, the members of the cartel "make periodic payments in cash" to the Lucchese Family and to the Gambino Family. *Id.* ¶ 13. Over time, the government contends, these activities have virtually eliminated "all competition from the [carting] industry ... [and have made it] impossible for any non-corrupt businesses to enter the industry and [to] compete for work. The consumer, in turn, [has been] forced to pay inflated prices for garbage disposal services." *Id.* ¶ 14.

The defendants in this action include the Private Sanitation Industry Association of Nassau/Suffolk, Inc. ("PSIA")—"a trade association of individuals and entities engaged in the business of solid waste collection, transportation, ... or disposal," *id.* ¶ 23—and the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Private Sanitation Local 813 ("Local 813")—the union that

---

**2.** The Lucchese Organized Crime Family and the Gambino Organized Crime Family were originally named as defendants in this action. However, on July 19, 1989, this court dismissed those parties on its own motion for the reasons

stated in *United States v. Bonanno Organized Crime Family of La Cosa Nostra,* 683 F.Supp. 1411, 1425 (E.D.N.Y.1988) (organized crime family is not "person" subject to suit under RICO), *aff'd,* 879 F.2d 20 (2d Cir.1989).

represents workers employed by companies engaged in the solid waste industry on Long Island. The complaint also names as defendants the following 44 corporate entities (all of which are alleged to participate in the solid waste disposal industry on Long Island): A–1 Carting Corporation ("A–1 Carting"); AA & M Carting Company ("AA & M Carting"); Ace Garbage & Rubbish Removal, Inc. ("Ace Garbage"); All Weather Carting Corporation ("All Weather Carting");[3] Associated Waste Disposal Company, Inc. ("Associated Waste"); B & D Carting, Inc. ("B & D Carting"); Bonsera, Inc. d/b/a Star Carting Corp. ("Star Carting"); Budget Roll–Off Systems, Inc. ("Budget Roll–Off"); C & C Refuse Carting Corporation ("C & C Carting"); Ciano and Sons Carting Co., Inc. ("Ciano Carting"); Comet Carting Company ("Comet Carting"); Daniel Finley Allen & Co., Inc. ("Daniel Allen Carting"); Delta Carting Company ("Delta Carting"); Dependable Sanitation Corp. ("Dependable Sanitation"); Detail Carting Corporation ("Detail Carting"); Enviro Carting Company d/b/a Island Carting Company ("Enviro Carting"); Ever Ready Sanitation Corporation ("Ever Ready Sanitation"); Harbor Carting Corporation ("Harbor Carting"); Hickey's Carting, Inc. ("Hickey's Carting"); Hillside Carting Company ("Hillside Carting"); Jamaica Ash & Rubbish Removal Company ("Jamaica Ash"); Long Island Rubbish Removal Corporation ("Long Island Rubbish"); Maggio's M & P Carting Services, Inc. ("Maggio's Carting"); MCM Sanitation, Inc. ("MCM Sanitation); Metro Waste, Inc. ("Metro Waste"); Mets Roll–Off Service, Inc. ("Mets Roll–Off"); Monbro Sanitation Service, Inc. ("Monbro Sanitation"); Prudential Waste Disposal, Inc. ("Prudential Waste"); Sail Carting & Recycling Corporation ("Sail Carting"); Salem Sanitary Carting Corporation ("Salem Carting"); South Side Carting Co., Inc. ("South Side Carting"); SSC Corporation; Standard Commercial Cartage, Inc. ("Standard Cartage"); Sun Carting, Inc. ("Sun Carting");

Sunset Sanitation Corporation ("Sunset Sanitation"); Superior Waste Systems, Inc. ("Superior Waste"); TWA Carting Corporation ("TWA Carting"); II Cousins Carting Corp. ("II Cousins Carting"); U–Need–A–Roll–Off Corporation ("U–Need Corp."); Unique Sanitation Corp. ("Unique Sanitation"); Vigliotti Brothers Carting Corporation ("Vigliotti Carting"); Vinnie Monte's Waste Systems, Inc. ("Vinnie Monte's Waste"); V & J Rubbish Removal, Inc. ("V & J Rubbish"); and Wayside Carting, Inc. ("Wayside Carting").

Finally, the complaint names as defendants the following 64 individuals: Michael Acquafredda (a principal of AA & M Carting); Bernard Adelstein (an officer of Local 813); John Allen (a principal of Daniel Allen Carting); Sarah Allen (a principal of Daniel Allen Carting); James Allesandria (a principal of V & J Rubbish); Vito Aniello (a principal of Dependable Sanitation); Salvatore Avellino, Jr. (a principal of Salem Carting and of SSC Corporation); Joseph Bonsera (a principal of Star Carting); Michael Bonsera (a principal of Star Carting); Charles Cannizzaro (a principal of MCM Sanitation and of Enviro Carting); Richard Carey (a former employee of the town of Islip, New York); Pasquale Casagrande (a principal of Hillside Carting);[4] Richard Ciano (a principal of Ciano Carting); Raniero Colatosti (a principal of Harbor Carting); Craig Comerford (a former employee of the town of Oyster Bay, New York); Antonio Corallo;[5] James J. Corrigan, Jr. (an executive director of PSIA); Edward DeMatteo (a principal of Sail Carting); Ernest DeMatteo (a principal of Sail Carting); Emedio Fazzini (a principal of Jamaica Ash); Joseph Ferrante (a principal of U–Need Corp. and of Unique Sanitation); Nicholas Ferrante (a principal of U–Need Corp. and of Unique Sanitation); John Guglielmo (a principal of II Cousins Carting); John Haynes (a principal of Standard Cartage); Dennis Hickey (a principal of Hickey's Carting); Robert Husak (a principal of B & D Cart-

---

**3.** All Weather Carting has defaulted in this action.

**4.** Pasquale Casagrande died after the complaint was filed.

**5.** Antonio Corallo has entered into a consent judgment with respect to this action.

ing); Jerome Kowalski (a former employee of the town of Oyster Bay, New York);[6] Vincent Maggio (a principal of Maggio's Carting); Michael Malena (a principal of Salem Sanitary and of SSC Corporation); John Maratea (a principal of Comet Carting); Peter Marcello (a principal of Metro Waste and of Mets Roll–Off); Anthony Miello (a principal of Enviro Carting and of MCM Sanitation); Anthony Montesano (a principal of Associated Waste and of Monbro Sanitation); Vincent Montesano (a principal of Vinnie Monte's Waste); Anthony Natale (a principal of Dependable Sanitation); Frank Notarantonio (a principal of All Weather Carting); John Pagano (a principal of Ace Garbage); Frank Palopoli (a principal of Sunset Sanitation); Salvatore Palopoli (a principal of Budget Roll–Off and of Superior Waste); David Pamlanye (a former employee of the town of Islip, New York); Steven Pamlanye (a former employee of the town of Islip, New York); Ralph Pantony (a principal of Delta Carting); Joseph Petrizzo (a principal of Ace Garbage, of Metro Waste, of Mets Roll–Off, and of TWA Carting); Joseph Pezza (a principal of A–1 Carting); Pasquale Pezza (a principal of A–1 Carting); Peter Reali (a principal of Hillside Carting); Robert Renna (a principal of Prudential Waste and of TWA Carting); Arthur Romersa (a former official of the Huntington Department of Environmental Control in the town of Huntington, New York); Thomas Ronga (a principal of Detail Carting); Franco Rotundo (a principal of Wayside Carting); Salvatore Santoro;[7] Robert Schuman (a principal of Standard Cartage); John Senia (a former employee of the town of Islip, New York); Pat Sesti; Peter Stramiello (a former employee of the town of Oyster Bay, New York);[8] Glenn Thweatt (a principal of C & C Carting); Orlando Velocci (a principal of South Side Carting); Anthony Vespucci; Allen Vesting (a former employee of Hickey's Carting); Arnold Vigliotti (a principal of Vigliotti Carting); Glen Vilchek (a principal of Sun Carting); Joseph Vittorio (a former employee of the town of Oyster Bay, New York);[9] Michael Walstrum (a former employee of the town of Islip, New York); and James Winters (a principal of Ever Ready Sanitation).

Almost all the defendants have moved to dismiss the complaint;[10] some have moved also for summary judgment or for sanctions.[11] Many of these motions present similar or identical grounds for dismissal, and many of the defendants have expressly sought leave of the court to join in the motions of their codefendants. For the convenience of all parties, then, the court will—to the extent applicable—consider a motion made on behalf of one to be a motion made on behalf of all. The principal grounds on which the complaint is attacked are that the government has failed to plead essential elements of its causes of action, that the complaint does not provide adequate notice to the defendants of the claims against them, and that the relief sought by the government is inappropriate under the governing substantive law. Other bases on which the defendants seek dismissal of the complaint include the untimeliness with which it was filed, the bar of double jeopardy, claim and issue preclusion, state sovereignty, divestment of subject matter jurisdiction by federal labor law, and the unconstitutionality of the RICO statute.

## DISCUSSION

### I. GENERAL CONSIDERATIONS

██ Federal Rule of Civil Procedure 8(a) provides that a complaint shall contain "a

---

6. Jerome Kowalski has entered into a consent judgment with respect to this action.

7. Salvatore Santoro has entered into a consent judgment with respect to this action.

8. Peter Stramiello has entered into a consent judgment with respect to this action.

9. Joseph Vittorio has entered into a consent judgment with respect to this action.

10. Of the defendants who remain in this action, the following have not filed motions to dismiss the complaint: Comet Carting, Wayside Carting, John Maratea, and Franco Rotundo.

11. The motions for sanctions by the defendants, see, e.g., Affidavit of James T. Gucciardo (on behalf of Raniero Colatosti and of Harbor Carting) ¶ 13, are without merit and are denied. Similarly, the motion of the government for sanctions against several of the defendants is denied.

short and plain statement" of the jurisdiction of the court over the action, "a short and plain statement of the [plaintiff's] claim," and a demand for judgment. The objective of this rule is to ensure that a defendant be provided with "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). These liberal standards of Rule 8(a) embody the principle that pleadings should be simple and concise. *United States v. Rivieccio*, 661 F.Supp. 281, 289 (E.D.N.Y.1987). As the Supreme Court indicated:

> [T]he Federal Rules of Civil Procedure do not require a claimant to set out in detail all the facts upon which he bases his claim.... Such simplified "notice pleading" is made possible by the liberal opportunity for discovery and the other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues.

*Conley*, 355 U.S. at 47–48, 78 S.Ct. at 102–103. See also *Wade v. Johnson Controls, Inc.*, 693 F.2d 19, 21 (2d Cir.1982) (under Rule 8(a), complaint "need not state 'facts' or 'ultimate facts' or 'facts sufficient to constitute a cause of action' ").

▇▇▇ Thus, contrary to the argument of many of the defendants in this action, the exceptional mandate of Federal Rule of Civil Procedure 9(b) that allegations of fraud and of mistake be pleaded with particularity is inapplicable to RICO actions that do not involve claims of fraud. *United States v. Bonanno Organized Crime Family of La Cosa Nostra*, 683 F.Supp. 1411, 1428 (E.D.N.Y.1988), *aff'd on other grounds*, 879 F.2d 20 (2d Cir.1989). Nevertheless:

> [The] [n]otice pleading requirements of [Rule 8(a) ] *are* applicable to RICO, and "it is imperative that the court and the defendants be placed on clear notice as to what is being alleged, and what the substance of the claim is, in order to facilitate a decision on the merits of the case."

*Id.* (emphasis added) (quoting *Ralston v. Capper*, 569 F.Supp. 1575, 1581 (E.D.Mich. 1983)). Failure to comply with Rule 8(a)—that is, failure to place a defendant and the court on adequate notice of the plaintiff's claim—generates a basis for dismissing the complaint. *Id.*

▇▇▇ Similarly, Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." This provision is "a lineal descendent of the common law general demurrer." Wright & Miller, Federal Practice and Procedure: Civil 2d § 1355. On a motion under Rule 12(b)(6), "the complaint is construed in the light most favorable to the plaintiff," *id.* at § 1357; or, as Judge Friendly remarked, the complaint is read "with great generosity," *Yoder v. Orthomolecular Nutrition Institute, Inc.*, 751 F.2d 555, 558 (2d Cir. 1985). Although the court "need not assume [the truth of] conclusory statements as to legal effects or conclusions, deductions, or opinions as to factual allegations," *Bonanno*, 683 F.Supp. at 1428 (citing Wright & Miller at Section 1357), "a court is required to accept the material facts alleged in the complaint as true...." *Easton v. Sundram*, 947 F.2d 1011, 1014–15 (2d Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992). As such, a motion under 12(b)(6) "cannot present any question of fact; rather, [it] presents only the question of whether or not the complaint has set forth a legally cognizable claim." *Roundtree v. City of New York*, 778 F.Supp. 614, 617 (E.D.N.Y. 1991). Hence, a complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley*, 355 U.S. at 45–46, 78 S.Ct. at 101–102.

## II. THE SUBSTANTIVE RICO CLAIMS

The complaint alleges forty-four claims for relief under the substantive RICO provision of 18 U.S.C. § 1962(c). The first claim for relief alleges that certain defen-

dants [12] are employed by or are associated with PSIA, a RICO enterprise, and that these defendants have conducted or have participated in the conduct of the affairs of PSIA through a pattern of racketeering activity. Complaint ¶¶ 200–04. The second claim for relief alleges that certain defendants [13] are employed by or are associated with the "Carting Industry Enterprise", a RICO enterprise, and that these defendants have conducted or have participated in the conduct of the affairs of the carting industry enterprise through a pattern of racketeering activity. *Id.* ¶¶ 205–09. The third claim for relief alleges that the defendants Bernard Adelstein, Salvatore Avellino, Jr., Antonio Corallo, Joseph Petrizzo, and Salvatore Santoro are employed by or are associated with Local 813, a RICO enterprise, and that these defendants have conducted or have participated in the conduct of the affairs of Local 813 through a pattern of racketeering activity. *Id.* ¶¶ 210–14. The fourth through the forty-fourth claims for relief allege that certain individual defendants [14] are employed by or are associated with at least one of forty-one different corporations [15]—each corporation constituting a separate RICO enterprise—and that these defendants have conducted or have participated in the conduct of the affairs of the corporations by which they are employed or with which they are associated through separate patterns of racketeering activity. *Id.* ¶¶ 215–20. Furthermore, the defendant PSIA is alleged to have conducted or to have participated in the conduct of the affairs of each of the corporate enterprises through a pattern of racketeering activity. *Id.*

The defendants argue that each of these claims must be dismissed insofar as each fails to state a claim on which relief may be granted. More specifically, the defendants argue that, in each of these first forty-four claims for relief, the government has failed to allege adequately all the elements required by Section 1962(c) for a substantive RICO claim. That section provides in its entirety:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

A violation of this provision, then, occurs when a "person" engages in the "(1) conduct (2) of an enterprise [by which the person is employed or with which he is associated] (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985) (footnote omitted). Or, as the Second Circuit has parsed the relevant text:

> [The plaintiff must allege:] (1) that the defendant (2) through the commission of two or more acts (3) constituting a "pat-

---

**12.** The first claim for relief names each of the defendants *except* the following: PSIA, Local 813, Budget Roll–Off, Comet Carting, Prudential Waste, SSC Corporation, TWA Carting, Bernard Adelstein, Richard Carey, Craig Comerford, Antonio Corallo, James J. Corrigan, Jr., Jerome Kowalski, John Maratea, David Pamlanye, Steven Pamlanye, Arthur Romersa, John Senia, Pat Sesti, Anthony Vespucci, Allen Vesting, Joseph Vittorio, and Michael Walstrum.

**13.** The second claim for relief names each of the defendants *except* the following: Budget Roll–Off, Comet Carting, Prudential Waste, SSC Corporation, TWA Carting, Richard Carey, John Maratea, David Pamlanye, Steven Pamlanye, John Senia, Allen Vesting, and Michael Walstrum.

**14.** The fourth through the forty-fourth claims for relief name (at least once) each of the individual defendants *except* the following: Bernard Adelstein, Richard Carey, Craig Comerford, Antonio Corallo, James J. Corrigan, Jr., Jerome Kowalski, John Maratea, David Pamlanye, Steven Pamlanye, Robert Renna, Arthur Romersa, Salvatore Santoro, John Senia, Pat Sesti, Peter Stramiello, Allen Vesting, Joseph Vittorio, and Michael Walstrum.

**15.** The corporations named as enterprises are all the named corporate defendants in this action *except* the following: Budget Roll–Off, Comet Carting, Prudential Waste, SSC Corporation, and TWA Carting. Additionally, Sail Sanitation, Inc. ("Sail Sanitation") and Sanicare, Inc. ("Sanicare Carting") are named as RICO enterprises (even though they are not named as defendants).

tern" (4) of "racketeering activity" (5) directly or indirectly ... participates in (6) an "enterprise" (7) the activities of which affect interstate or foreign commerce.

*Moss v. Morgan Stanley Inc.*, 719 F.2d 5, 17 (2d Cir.1983), *cert. denied*, 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984).[16] Further, a plaintiff "must, of course, allege each of these elements to state a claim." *Sedima*, 473 U.S. at 496, 105 S.Ct. at 3285. Failure to allege an element of a substantive RICO violation as to any one cause of action requires dismissal of that part of the complaint. See, e.g., *Albany Insurance Co. v. Esses*, 831 F.2d 41, 44 (2d Cir.1987) (complaint dismissed for failure to plead "enterprise" adequately). It is necessary, then, for the court to examine each of these first forty-four claims for relief under Section 1962(c) in order to determine whether the government has properly pleaded each of the required elements.

A. *Enterprise*

 Section 1962(c) provides that a defendant is not liable for a substantive RICO violation unless he is "employed by" or is "associated with" an "enterprise" (the affairs of which implicate interstate or foreign commerce). Section 1961(4) of Title 18 of the United States Code provides that:

"[E]nterprise" includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity[.]

Under this provision—which includes both corporations and unions as "enterprises"— it is immediately apparent that the government has adequately alleged the "enterprise" element for the first, third, and fourth through forty-fourth claims for relief. As to the first claim for relief, PSIA is alleged to be "an association ... existing and operating for the purpose of controlling the solid waste disposal industry on Long Island...." Complaint ¶ 132. The court notes further that PSIA is alleged to be an incorporated entity, ¶ 23; as such, it is plainly an "enterprise" under Section 1961(4). As to the third claim for relief, Local 813 is alleged to be a "union ... existing and operated for the purpose of, *inter alia*, taking part in the control of the solid waste disposal industry on Long Island...." *Id.* ¶ 135. Again, under the plain meaning of Section 1961(4), the government has properly alleged the enterprise element for this claim. See *Bonanno*, 683 F.Supp. at 1424 (labor union may constitute RICO enterprise). Next, as to the fourth through the forty-fourth claims for relief, thirty-nine of the corporate defendants [17] as well as two non-defendant corporations [18] are each alleged to constitute "a corporation organized, existing and operating for the purpose of enabling the defendant officers, directors, employees, shareholders and operators of the corporation ... to take part in the control of the solid waste disposal industry on Long Island...." Complaint ¶ 134. For each of these claims, then, the government has adequately pleaded the requisite enterprise.

As to the second claim for relief, the required enterprise element is also properly pleaded; however, the adequacy of that part of the pleading is slightly less obvious in that the enterprise pleaded there is not (as with those listed above) a "legal entity." Rather, for the second claim, the enterprise is alleged to be "a group composed of, but not limited to" all the named defendants "associated in fact for the purpose of controlling the waste disposal industry on Long Island...." *Id.* ¶ 133. As a matter of pleading, this allegation is adequate to assert that the carting industry enterprise

---

**16.** To the extent that *Moss* reflects an earlier understanding in the Second Circuit as to what constitutes a pattern of racketeering activity, it has, of course, been superseded by later case law. See, e.g., *United States v. Indelicato*, 865 F.2d 1370, 1375 (2d Cir.) (en banc), *cert. denied*, 493 U.S. 811, 110 S.Ct. 56, 107 L.Ed.2d 24 (1989).

**17.** As indicated above, the following corporate defendants are not alleged to constitute enterprises: Budget Roll-Off, Comet Carting, Prudential Waste, SSC Corporation, and TWA Carting.

**18.** The non-defendant corporations named as RICO enterprises are: Sail Sanitation and Sanicare Carting.

is indeed an "enterprise" for purposes of RICO. See *United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524, 2528, 69 L.Ed.2d 246 (1981) (RICO "enterprise" is "group of persons associated together for a common purpose of engaging in a course of conduct"); see also *Procter & Gamble v. Big Apple Industrial Buildings, Inc.*, 879 F.2d 10, 15 (2d Cir.1989) (same), *cert. denied*, 493 U.S. 1022, 110 S.Ct. 723, 107 L.Ed.2d 743 (1990); *Beauford v. Helmsley*, 865 F.2d 1386, 1391 (2d Cir.) (en banc) ("all ... defendants in association with one another [for common purpose]" may constitute RICO enterprise), *vacated and remanded for further consideration in light of H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195, *original decision adhered to*, 893 F.2d 1433 (2d Cir.), *cert. denied*, 493 U.S. 992, 110 S.Ct. 539, 107 L.Ed.2d 537 (1989).

At least one defendant has argued that the government has not adequately pleaded that this carting industry enterprise exists as an association independent of a pattern of racketeering activity; accordingly, the defendant argues, the complaint must be dismissed under *Procter & Gamble*, 879 F.2d at 15 ("[W]hen facing a RICO count in ... a complaint, a district court must determine whether it *independently* alleges both an enterprise ... and a pattern of racketeering activity...") (emphasis added). See Memorandum of Enviro Carting at 33–34. This distinction between the elements of enterprise and of pattern was recognized as fundamental by the Supreme Court in *Turkette*, 452 U.S. at 583, 101 S.Ct. at 2529:

> While the proof used to establish these separate elements may in particular cases coalesce, proof of one does not necessarily establish the other. The "enterprise" is not the "pattern of racketeering activity"; it is an entity separate and apart from the pattern of activity in which it engages. The existence of an enterprise at all times remains a separate element which must be proved by the Government.

At this point, however, the government has indeed adequately *alleged* the independent element of enterprise for this count; further, it does not appear "beyond doubt that the [government] can prove no set of facts in support" of that allegation. Hence, whether or not the government will be able to demonstrate that the carting industry enterprise is such an association that exists independently of any pattern of racketeering activity is a matter that must await either the production of proof at trial or at least the probing test of a timely motion for summary judgment.

■ Many defendants have argued, as a collateral matter, that the complaint improperly alleges that certain "persons" (as used in Section 1962(c)) are also "enterprises" (as used in that same section). See, e.g., Memorandum of AA & M Carting at 20–21. The principle to which these defendants allude is that "the RICO 'person' engaged in the proscribed conduct ... and the 'enterprise' must be different from one another, i.e. they must be separate entities." *Jacobson v. Cooper*, 882 F.2d 717, 719 (2d Cir.1989). It is certainly true that many of the RICO enterprises in the complaint are also alleged to be defendants. However, the relevant inquiry is not whether an entity named as a RICO enterprise in one count of the complaint may be named as a RICO person in another count; rather, the test is whether an entity named as an enterprise is also named as a person that conducted the affairs of *itself* (as an enterprise) through a pattern of racketeering activity. As stated in *Bennett v. United States Trust Co. of New York*, 770 F.2d 308, 315 (2d Cir.1985), *cert. denied*, 474 U.S. 1058, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986): An "entity may not be *simultaneously* the 'enterprise' and the 'person' who conducts the affairs of the enterprise through a pattern of racketeering activity" (emphasis added). Although the government refers to this as "complete" identity, Memorandum of Government at 141, it is perhaps more accurate to refer to the prohibited allegation as one of "simultaneous" identity. In any event, the complaint at no point alleges that a defendant is simultaneously a person and the enterprise through which that person acts. Thus, for

example, the defendant A–1 Carting is a person that allegedly acts through the PSIA and the carting industry enterprises (first and second claims for relief); and A–1 Carting is also alleged to be an enterprise through which other persons (the defendants PSIA, Joseph Pezza, and Pasquale Pezza) allegedly act (fourth claim for relief). Hence, the superficial identity of defendants as both persons and enterprises does not vitiate the otherwise adequately pleaded enterprise elements of the first forty-four claims for relief.

Finally, as noted above, each of these RICO enterprises is alleged to be an enterprise "engaged in, or the activities of which affect, interstate or foreign commerce." See Complaint ¶ 201 (PSIA enterprise), ¶ 206 (carting industry enterprise), ¶ 211 (Local 813 enterprise), and ¶ 216 (the corporate enterprises). As such, the government has properly pleaded under Section 1962(c) the required element of enterprise—as well as the jurisdictional requirement of "interstate or foreign commerce" with respect to those pleaded enterprises.

### B. *Pattern of Racketeering Activity*

■ Section 1962(c) further provides that a defendant incurs RICO liability only if he "conduct[s] or participate[s], directly or indirectly, in the conduct of [a RICO] enterprise's affairs through a pattern of racketeering activity" or through the collection of unlawful debt. At this point, a threshold observation must be made about *United States v. Minicone*, 960 F.2d 1099 (2d Cir.1992), *cert. denied*, —— U.S. ——, 112 S.Ct. 1511, 117 L.Ed.2d 648 (1992). There, the Second Circuit stated that "[p]roof of a RICO violation pursuant to § 1962(c) requires a showing that an 'enterprise' engaged in a 'pattern' of racketeering activity." *Minicone*, 960 F.2d at 1106. This statement is almost certainly an inadvertence: Section 1962(c) declares it illegal for

a *person*—not for an *enterprise*—to engage in a pattern of racketeering activity. As previously stated by the Second Circuit in *United States v. Persico*, 832 F.2d 705 (2d Cir.1987), *cert. denied*, 486 U.S. 1022, 108 S.Ct. 1995, 100 L.Ed.2d 227 (1988):

> The focus of section 1962(c) is on the *individual* patterns of racketeering engaged in by a *defendant*, rather than the collective activities of the members of the enterprise, which are proscribed by [the RICO conspiracy statute of] section 1962(d).

*Persico*, 832 F.2d at 714 (emphasis added). To the extent that *Minicone* thus suggests that a RICO claim requires proof of only one pattern of racketeering activity by the RICO enterprise rather than of separate patterns by each named defendant, the case is inconsistent both with the text of Section 1962(c) and with established RICO case law. Accordingly, this observation in *Minicone*, believed to be an inadvertence, will be disregarded.[19]

In this case, the forty-four substantive RICO counts of the complaint allege that the defendants did conduct or did participate in the conduct of the affairs of the various RICO enterprises through patterns of racketeering activity (but not through the collection of unlawful debt). As to the meaning of this element, 18 U.S.C. § 1961(5) provides that:

> "[P]attern of racketeering activity" requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity[.]

This provision sets forth at least two minimal components of the "pattern of racketeering activity" element of Section 1962(c): First, a defendant must have committed "at least two" acts of racketeering activity;

---

**19.** A poorly formulated passage in *Turkette* would appear to support the analytical error in *Minicone:* "The 'enterprise' ... is an entity separate and apart from the pattern of activity in which *it* engages." *Turkette*, 452 U.S. at 583, 101 S.Ct. at 2528 (emphasis added). Subsequently, however, the Court has stated that

RICO forbids a *person* to conduct or to participate in the conduct of the affairs of an enterprise through a pattern of racketeering activity. *H.J. Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 232–33, 109 S.Ct. 2893, 2897, 106 L.Ed.2d 195 (1989).

and, second, the defendant must have committed those acts within a certain period of time. The Supreme Court, however, has had occasion to observe that Section 1961(5) requires more than these two sub-elements in order to establish a pattern of racketeering activity. *Sedima,* 473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14. The Court has even had occasion to attempt to articulate precisely what "more" is required. *H.J. Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). In this case, the defendants raise no dispute about the adequacy of the complaint with respect to the time frame set out in Section 1961(5); however, they vigorously contest the legal sufficiency both of the acts alleged to be acts of racketeering and of the patterns those acts are alleged to constitute. It is necessary, then, for this court to review both the individual racketeering acts that are alleged and also the pleading of "pattern" with respect to those acts.

1. Racketeering Acts

Section 1961(1) of Title 18 of the United States Code provides in relevant part that "racketeering activity" means:

(A) any act or threat involving ... arson, robbery, bribery, [or] extortion ... which is chargeable under State law and punishable by imprisonment for more than one year;

(B) any act which is indictable under any of the following provisions of title 18, United States Code: ... section 1951 (relating to interference with commerce, robbery, or extortion) [and] section [ ] 2312 ... (relating to interstate transportation of stolen motor vehicles)....

That is, "racketeering activity" is any act that is chargeable and punishable under certain state law felony classifications or indictable under specific federal criminal provisions. Any act that does not fall within the purview of Section 1961(1) is not an act of racketeering activity.

The complaint collects as one unit the first 195 alleged racketeering acts. Essentially, these acts concern five alleged attempts by thirty-nine of the defendants to prevent successful competition by certain rebel carters, Jerry and Robert Kubecka, with the carting cartel. Those five acts involved compelling the Kubeckas to surrender certain garbage stops in Nassau County and in Suffolk County to certain defendants, to refrain from bidding on a public disposal contract, to take part in a bid-rigging scheme, to surrender garbage stops at the Cold Spring Harbor School District, and not to solicit certain garbage disposal contracts. Complaint ¶ 139. Thirty-three of the defendants [20] are alleged to have committed these acts, to have conspired to commit these acts, or to have attempted to commit these acts, *id.* ¶ 138; six of the defendants [21] are alleged to have aided and abetted these acts, *id.* ¶ 140.

Notwithstanding that there are only five transactions that underlie this part of the complaint, the government has multiplied each of the five transactions by the thirty-nine defendants to arrive at the total of 195 acts of racketeering. Hence, rather than simply name thirty-nine defendants five times over for a sum of five acts of racketeering, the government has expanded these five events into the impressive count of 195 racketeering acts. However, the complaint unfortunately fails to correlate any one defendant to any one racketeering act: It merely provides a list of the thirty-three principal defendants, *id.* ¶ 138, a list of the five acts against the Kubeckas, *id.* ¶ 139, and a list of the six aiding-and-abetting defendants, *id.* ¶ 140. It is only by guesswork that one is able to match any

---

**20.** These defendants are: the Lucchese Family, PSIA, Local 813, A–1 Carting, Detail Carting, Enviro Carting, Harbor Carting, Jamaica Ash, Maggio's Carting, MCM Carting, Sail Carting, Salem Sanitary Carting, Standard Cartage, Unique Sanitation, Vinnie Monte's Waste, Wayside Carting, Salvatore Avellino, Jr., Charles Cannizzaro, Raniero Colatosti, James J. Corrigan, Jr., Edward DeMatteo, Ernest DeMatteo, Emedio Fazzini, Nicholas Ferrante, John Haynes, Vincent Maggio, Vincent Montesano, Joseph Pezza, Pasquale Pezza, Thomas Ronga, Franco Rotundo, Robert Schuman, and Anthony Vespucci.

**21.** These defendants are: the Gambino Family, Bernard Adelstein, Antonio Corallo, Anthony Miello, Arthur Romersa, and Salvatore Santoro.

numbered racketeering act with any particular defendant or with any particular event involving the Kubeckas.

The lack of clarity as to which defendants are alleged to have engaged in particular acts plagues almost every page of the complaint. This problem would by itself have certainly required dismissal of many of the alleged racketeering acts under Rule 8(a) simply for failure to put each defendant on notice as to the claim against him. However, in response to a directive from this court, the government has submitted a 70–page supplementary document to cure those defects (the "complaint supplement" or the "supplement"), and this court will treat that supplement as a "more definite statement" under Federal Rule of Civil Procedure 12(e). This supplement indicates precisely what predicate act each defendant is alleged to have committed or to have aided and abetted. See, e.g., Supplement at 1–2 (listing six specific predicate acts alleged to have been committed by defendant Local 813) and at 29–30 (listing five specific predicate acts alleged to have been aided and abetted by defendant Bernard Adelstein). Thus, however onerous it may be for the parties and for the court to have to integrate the 132–page complaint and the 70–page supplement in order to determine that which the complaint alone should have made clear, the court finds that this newer document satisfies Rule 8(a) with respect to providing notice to each defendant of the particular racketeering acts he is alleged to have committed.

As indicated, the first 195 alleged acts of racketeering concern five alleged incidents directed at certain rebel carters. In order to plead that these acts are instances of "racketeering activity" as defined in Section 1961(5), the government states that:

[The defendants named in these 195 acts] did knowingly, willfully and intentionally commit acts chargeable under state law at the time of their commission as Coercion in the First Degree and Attempted Coercion in the First Degree, New York Penal Law, Sections 20.00, 110.05 and

135.65, which acts are punishable by imprisonment for more than one year, as set forth in Title 18, United States Code, Section 1961(1)(A), and did knowingly, willfully and intentionally commit acts, attempt to commit acts, or conspire to commit acts which are indictable under Title 18, United States Code, Sections 1951 and 2, as set forth in Title 18, United States Code, Section 1961(1)(B).

Complaint ¶ 137. The defendants challenge the adequacy of this part of the complaint on several points.

■ First, they argue that the New York State offense of coercion is not "racketeering activity" as defined by Section 1961(1)(A).[22] The government concedes that, as a literal matter, Section 1961(1)(A) does not define racketeering activity to include state law offenses that involve coercion as such; however, the government argues, Section 1961(1)(A) does encompass state law offenses that involve extortion. The government submits that coercion under New York law falls within "extortion" as used in Section 1961(1)(A).

Under the New York Penal Law, extortion is proscribed as a type of larceny:

Larceny includes a wrongful taking, obtaining or withholding of another's property, with the intent prescribed in subdivision one of this section, committed in any of the following ways:

. . . . .

(e) By extortion.

A person obtains property by extortion when he compels or induces another person to deliver such property to himself or to a third person by means of instilling in him a fear that, if the property is not so delivered, the actor or another will:

(i) Cause physical injury to some person in the future; or

(ii) Cause damage to property; or

(iii) Engage in other conduct constituting a crime; or

. . . . .

---

**22.** Coercion in the first degree is a "class D felony." See New York Penal Law Section 135.65. As such, it is punishable by "imprisonment for more than one year" as required by Section 1961(1)(A). See New York Penal Law Section 70.00.

New York Penal Law Section 155.05. By contrast, the New York Penal Law defines the offense of "coercion in the second degree" (a misdemeanor) as follows:

A person is guilty of coercion in the second degree when he compels or induces a person to engage in conduct which the latter has a legal right to abstain from engaging in, or to abstain from engaging in conduct in which he has a legal right to engage, by means of instilling in him a fear that, if the demand is not complied with, the actor or another will:

1. Cause physical injury to a person; or

2. Cause damage to property; or

3. Engage in other conduct constituting a crime; or

. . . . .

New York Penal Law Section 135.60. Finally, "coercion in the first degree" (a felony), the offense alleged in the complaint for the first 195 acts of racketeering, is defined as follows:

A person is guilty of coercion in the first degree when he commits the crime of coercion in the second degree, and when:

1. He commits such crime by instilling in the victim a fear that he will cause physical injury to a person or cause damage to property; or

2. He thereby compels or induces the victim to:

(a) Commit or attempt to commit a felony; or

(b) Cause or attempt to cause physical injury to a person; or

(c) Violate his duty as a public servant.

New York Penal Law Section 135.65. Thus, it is clear that the offense alleged in the indictment, coercion in the first degree, is grounded in the conduct proscribed as coercion in the second degree. The offense of coercion in the second degree, by turn, is parallel to the offense of larceny by extortion. However, the offenses of coercion and of larceny by extortion are clearly distinct under New York Law: Coercion is the compelling of a person (by instilling fear in him) to do an act (or not to do an act) which

that person has a legal right not to do (or to do); but larceny by extortion is the compelling of a person (by instilling fear in him) to surrender property. Thus, although larceny by extortion may analytically fall within the definition of coercion—in that to compel a person to surrender property is also to compel a person to do an act which that person has a legal right not to do—it is not the case that every act of coercion is also an act of larceny by extortion. Rather, larceny by extortion requires the particular element of forcing a person to surrender property—an element not required by the offense of coercion.

The government argues that, although larceny by extortion and coercion are distinct offenses under New York law, Section 1961(1)(A) is broad enough to encompass both crimes:

The legislative history of section 1961(1)(A) plainly states that "State offenses are included by generic designation." H.[R.]Rep. No. 91–1549, 91st Cong. 2d Sess., *reprinted in* 1970 [U.S.C.C.A.N.] 4007, 4032. "This statement manifests the legislative intent to incorporate the Supreme Court's holding in *United States v. Nardello*, 393 U.S. 286 [89 S.Ct. 534, 21 L.Ed.2d 487] .... (1969), into the RICO statute." *United States v. Forsythe*, 560 F.2d 1127, 1137 (3d Cir.1977).

In *Nardello*, the Supreme Court held that alleging a state violation which falls within the *generic category* of the predicate offense of extortion is adequate to charge the violation of the federal statute incorporating the offense.

Memorandum of Government at 43. Hence, the government argues, because larceny by extortion and coercion fall within the genus of crimes designated by the term "extortion" in Section 1961(1)(A), acts chargeable as coercion may properly be alleged as racketeering activity. Accordingly, the reliance by the defendants on the "fine distinctions" between larceny by extortion and coercion, the government argues, "is simply irrelevant." *Id.*

The government errs, however, in its contention that the difference between

coercion and larceny by extortion is an "irrelevant" distinction. As demonstrated above, the difference between these two offenses is that larceny by extortion requires the taking of property from a person whereas coercion simply requires the forcing of a person to do something against his will. The distinction is not trivial: Section 1961(1)(A) refers to an "act ... involving ... *extortion* ..." (emphasis added), and it is of the essence of extortion—not only in New York law but, more importantly, in the law generally—that one compel another to surrender *property*. See *United States v. Nardello*, 393 U.S. 286, 296, 89 S.Ct. 534, 539, 21 L.Ed.2d 487 (1969) ("[T]he indictment encompasses a type of activity generally known as extortionate since *money* was to be obtained from the victim by virtue of fear and threats....") (emphasis added); *United States v. Emmons*, 410 U.S. 396, 406 n. 16, 93 S.Ct. 1007, 1013 n. 16, 35 L.Ed.2d 379 (1973) ("conventional definition of extortion" *qua* " 'the obtaining of *property* from another ... with his consent, induced by a wrongful use of force or fear, or under color of official right") (emphasis added); *United States v. Bagaric*, 706 F.2d 42, 58 (2d Cir.) (referring to extortion as "classic *economic* crime") (emphasis added), *cert. denied*, 464 U.S. 840, 104 S.Ct. 133, 78 L.Ed.2d 128 (1983). Compare with 18 U.S.C. § 1951(b)(2) (for purposes of Hobbs Act, "extortion" denotes "the obtaining of *property* from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right") (emphasis added); see also *Black's Law Dictionary* at 525 (5th ed. 1979) (defining "extortion" as "[t]he obtaining of *property* from another induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right") (emphasis added).

Along these lines, the government cites *Rose v. Bartle*, 871 F.2d 331 (3d Cir.1989), for the proposition that "the taking of property is [not] a necessary element of the general term extortion in section 1961(1)(A)." Memorandum of Government at 44. In that case, the court held that a Pennsylvania statute that proscribed

" 'threaten[ing] unlawful harm to any public servant with intent to influence his decision, opinion, recommendation, ... or other exercise of discretion in a judicial and administrative proceeding' " as well as " 'threaten[ing] unlawful harm to any public servant ... with intent to influence him to violate his known legal duty' " could constitute extortion under Section 1961(1)(A). *Rose*, 871 F.2d at 363 (quoting Section 4702(a)(2), (3) of Title 18 of the Pennsylvania Consolidated Statutes Annotated).

However, two aspects of that case undermine the position of the government. First, the court in *Rose* recognized that the Supreme Court in *Nardello* had "characterized [extortion] as [activity] by which *'funds* are obtained from the victim with his consent produced by the use of force, fear, or threats.' " *Rose*, 871 F.2d at 362 (quoting *Nardello*, 393 U.S. at 295, 89 S.Ct. at 539) (emphasis added). Thus, even the *Rose* court understood that extortion is preeminently a crime that involves the taking of property. Second, although the Third Circuit in that case specifically declined to apply the *"Nardello* generic extortion standard," *id.* at 363, the court completely failed to set forth any rationale for its finding that the Pennsylvania statute fell within the purview of Section 1961(1)(A). For this reason, *Rose* does not provide compelling authority for this court to ignore the indications of *Nardello* and of other authorities that extortion—as used in Section 1961(1)(A)—requires the obtaining of property.

Because an essential element of extortion is not required by the New York offense of coercion, the two offenses are not, as urged by the government, effectively identical. Further, because Section 1961(1)(A) includes in the definition of racketeering activity a state offense involving extortion but not one involving coercion, the New York Penal Law felony of coercion in the first degree is not racketeering activity for purposes of RICO. Accord: *Center Cadillac, Inc. v. Bank Leumi Trust Company of New York*, CV–91–7776, slip op., 1992 WL 84576 (S.D.N.Y.

Apr. 13, 1992) ("New York's 'coercion' statute, N.Y.P.L. § 135.65, is not among the state criminal laws specified as providing a basis for RICO liability, and the allegations as to this statute are dismissed."). Accordingly, to the extent that the first 195 alleged acts of racketeering state that the defendants named there have committed acts chargeable as coercion in the first degree, those acts of racketeering activity are improperly pleaded and must be dismissed.[23]

The complaint also alleges that these 195 alleged acts of racketeering are acts that are "indictable" under 18 U.S.C. §§ 1951 and 2; accordingly, the government argues, these 195 acts are alternatively maintainable as racketeering activity under Section 1961(1)(B). Section 1951(a) of the Hobbs Act provides:

> Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined not more than $10,000 or imprisoned not more than twenty years, or both.

The defendants argue that the government has not adequately alleged violations of this provision.

■ Before considering the specific objections of the defendants, however, two initial observations are necessary in order to clarify precisely what is alleged against the defendants in this part of the complaint. First, in order to constitute a predicate act under Section 1961(1)(B), the conduct that is the subject of the allegation must be "indictable" under one of several federal criminal provisions specifically listed in Section 1961(1)(B). *United States v. Ruggiero*, 726 F.2d 913, 920 (2d Cir.), *cert. denied*, 469 U.S. 831, 105 S.Ct. 118, 83 L.Ed.2d 60 (1984). Because Section 371 (which prohibits conspiracy to commit an offense) is not listed in Section 1961(1)(B) as one of the sections of Title 18 under which a predicate act must be "indictable," a conspiracy to commit one of the acts listed in Section 1961(1)(B) is not itself a predicate act. *Id.* at 919–20; see also *Bonanno*, 683 F.Supp. at 1431 (conspiracy to commit predicate act listed in Section 1961(1)(B) not itself a predicate act).[24] Thus, at first, it may appear that the allegations of the complaint that the thirty-three principal defendants "did knowingly, willfully and intentionally commit ... or *conspire to commit*" these acts against the Kubeckas, complaint ¶ 137 (emphasis added), would fail to state a predicate act. However, Section 1951(a) itself proscribes conspiring to violate the substantive provisions of the Hobbs Act. Accordingly, to the extent that the defendants here are charged with conspiring to commit these acts against the Kubeckas, they are alleged to have committed acts that are "indictable" under Section 1951. As such, they are alleged to have committed acts cognizable as racketeering activity under Section 1961(1)(B).

■ Second, as noted above, the government alleges that six of the defendants are accountable for these acts against the Kubeckas because they aided and abetted the commission of the acts. Section 2(a) of Title 18 of the United States Code provides that "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission is punishable *as a*

---

**23.** As an alternative, the government urges the court to consider these alleged racketeering acts as instances of larceny by extortion. The government submits that, because it has pleaded that the named defendants took certain property rights from the Kubeckas, the government has set out the elements of larceny by extortion. The court does not disagree with the proposition that the New York offense of larceny by extortion is cognizable as racketeering activity under Section 1961(1)(A); but, to the extent that the government seeks to allege that the acts against the Kubeckas are acts chargeable as larceny by extortion, it must amend its pleading so as to put the defendants on notice of the claim against them as required by Rule 8(a).

**24.** By contrast, conspiring to commit one of the predicate acts listed in Section 1961(1)(A) *is* itself a predicate act. *Ruggiero*, 726 F.2d at 918–19.

*principal*" (emphasis added). Unlike Section 371, Section 2 does not provide an independent offense under which certain conduct is "indictable." See, e.g., *United States v. Kegler*, 724 F.2d 190, 200 (D.C.Cir.1984) ("[A]iding and abetting ... is not an independent crime under 18 U.S.C. § 2."). Rather, Section 2 provides that one who aids or abets an offense is punishable as though he himself committed the offense. Because Section 2 provides that an aider and abettor will be treated as a principal, "[a] defendant's aiding and abetting the commission of a predicate act [listed in Section 1961(1)(B)] may constitute a predicate act itself." *Bonanno*, 683 F.Supp. at 1428. Hence, the allegations that several defendants are accountable for these acts as aiders and abettors are not invalid as a matter of law.

▋ The defendants challenge this part of the complaint on the ground that Section 1951(a) requires that the actor obtain from his victim "property" (either by robbery or by extortion); the defendants argue that there is no allegation in the complaint of this element of a Section 1951 offense. However, the government correctly points out that the Second Circuit has construed this aspect of the Hobbs Act quite broadly:

> The concept of property under the Hobbs Act [i.e., under Section 1951], as devolved from its legislative history and numerous decisions, is not limited to physical or tangible property ... but includes, in a broad sense, any valuable right considered as a source of wealth....

*United States v. Tropiano*, 418 F.2d 1069, 1075 (2d Cir.1969), *cert. denied*, 397 U.S. 1021, 90 S.Ct. 1258, 25 L.Ed.2d 530 (1970). See also *United States v. Local 560 of International Brotherhood of Teamsters*, 780 F.2d 267, 281–82 (3d Cir.1985) ("property" in Hobbs Act includes intangible property rights), *cert. denied*, 476 U.S. 1140,

106 S.Ct. 2247, 90 L.Ed.2d 693 (1986); *United States v. Zemek*, 634 F.2d 1159, 1174 (9th Cir.1980) (same), *cert. denied*, 450 U.S. 916, 101 S.Ct. 1359, 67 L.Ed.2d 341 (1981); *United States v. Santoni*, 585 F.2d 667, 673 (4th Cir.1978) (same), *cert. denied*, 440 U.S. 910, 99 S.Ct. 1221, 59 L.Ed.2d 459 (1979). Hence, the "right to pursue a lawful business including the solicitation of customers necessary to the conduct of such business" constitutes "property" within the meaning of the Hobbs Act. *Tropiano*, 418 F.2d at 1076. In this case, the complaint does allege that the named defendants took from the Kubeckas a "valuable right considered as a source of wealth...." That is, the complaint alleges that:

> The[se] defendants attempted to and did obtain property from the Kubeckas, to wit: the right to pursue a lawful business including seeking income, profits, sales and contracts; the right to make business decisions free from outside pressure; and the right to compete with these defendants and others in the collection, transportation and disposal of solid waste on Long Island.

Complaint ¶ 138. Under the broad construction of *Tropiano*, these allegations satisfy the "property" element of Section 1951.[25] For this reason, the government has properly pleaded the first 195 racketeering acts under Section 1961(1)(B) insofar as it has pleaded those acts as "indictable under ... section 1951."

The next unit of alleged predicate acts are those enumerated as racketeering acts 196 through 199. The complaint here alleges that the defendant Pat Sesti and the now-dismissed defendant Gambino Family extorted money from the Kubeckas in connection with certain contracts held by the Kubeckas for waste removal (racketeering acts 196 and 198 as to the Gambino Family and as to Sesti, respectively) and that Sesti and the Gambino Family compelled the Ku-

---

**25.** As indicated above, these allegations might similarly have satisfied the "property" element of larceny by extortion set out in New York Penal Law Section 155.05 had the government pleaded that offense as a basis for racketeering activity under Section 1961(1)(A). See, e.g., *People v. Spatarella*, 34 N.Y.2d 157, 161–62, 356 N.Y.S.2d 566, 313 N.E.2d 38 (1974) (right to solicit and to service business customers is "property" within meaning of New York grand larceny by extortion statute). See also *United States v. Enmons*, 410 U.S. 396, 406 n. 16, 93 S.Ct. 1007, 1013 n. 16, 35 L.Ed.2d 379 (1973) (Hobbs Act "incorporate[s] New York's conventional definition of extortion").

beckas to sell their carting business (racketeering acts 197 and 199 as to the Gambino Family and as to Sesti, respectively). Complaint ¶¶ 145, 147. The complaint further alleges that these acts were chargeable under New York Penal Law Sections 20.00 (criminal liability for conduct of another), 105.10 (conspiracy), 110.05 (attempt), 135.65 (coercion in first degree), and 155.42 (grand larceny in the first degree); also, the complaint alleges that these acts are indictable under 18 U.S.C. §§ 1951 and 2. For the reasons indicated above with respect to the first 195 racketeering acts, this part of the complaint is dismissed to the extent that it sets out alleged violations of the New York coercion statute as predicate acts. However, because these acts are alternatively indictable under the Hobbs Act, the predicate acts are nonetheless properly pleaded.[26]

Racketeering act 200 alleges that the defendant Local 813 compelled Reuter Incorporated ("Reuter"), a rebel carting company, to desist from performing work on a carting contract with the town of Islip, New York; the complaint alleges that this act was chargeable as coercion under New York law and indictable under 18 U.S.C. § 1951. Complaint ¶¶ 149–150. Again, the complaint alleges that the "property" taken from the rebel carter was, under the broad definition of *Tropiano*, the right to pursue a business as a source of wealth. *Id.* ¶ 150. For the reasons set forth above, the allegations concerning coercion are dismissed, but the racketeering act itself is found to be sufficiently pleaded.

Similarly, racketeering acts 201 through 221 allege that the defendants AA & M Carting, A–1 Carting, Delta Carting, Enviro Carting, Jamaica Ash, MCM Sanitation, Sun Carting, Unique Sanitation, Vinnie Monte's Waste, Michael Acquafredda, Charles Cannizzaro, Emedio Fazzini, Joseph Ferrante, Nicholas Ferrante, Anthony Miello, Anthony Montesano, Jr., Vincent Montesano, Ralph Pantony, Joseph Pezza, Pasquale Pezza, and Glen Vilchek compelled Arthur T. Mott and Freeport Gardens, Inc. d/b/a Apple Carting ("Apple Carting") to participate in an illegal restraint of competition and also not to participate in competitive solicitation of carting business. Complaint ¶ 152. These acts are alleged to be chargeable as coercion under New York State Law and indictable under 18 U.S.C. §§ 1951 and 2. For all the reasons set forth above, these alleged acts of racketeering are adequately pleaded insofar as they allege racketeering activity by virtue of Sections 1961(1)(B) and 1951; they are not adequately pleaded to the extent that they are predicated on the New York coercion statute.

Alleged racketeering acts 222 through 278 claim that certain named defendants took property from the town of Islip, New York "by unlawfully placing garbage in the Islip town dump, thereby taking garbage disposal space, without paying the required fees" and also bribed officials of the town of Islip "in order to allow these defendants and others to dispose of solid waste at the Islip Town Landfill in Hauppauge, New York without paying the required fees." Complaint ¶¶ 155, 157. The complaint alleges that these acts are chargeable under New York Penal Law Sections 20.00 (criminal liability for conduct of another), 110.05 (attempt), 155.35 (grand larceny in the third degree), 200.00 (bribery in the third degree), and 200.20 (rewarding official misconduct in the second degree)— offenses punishable by imprisonment for more than one year. Plainly, to the extent that these racketeering acts allege that certain named defendants[27] committed acts chargeable as bribery or as rewarding official misconduct, they allege acts "involving

---

**26.** Of course, predicate acts 196 and 198 must be dismissed in that they are alleged to have been committed only by a former defendant, the Gambino Family, which has since been dismissed. For the sake of convenience, however, the court will consider each racketeering act *qua* racketeering act; that is, the validity of the racketeering acts will be considered independently of the identity of the defendant alleged to have committed them.

**27.** These defendants are: All Weather Carting, Associated Waste, Hickey's Carting, Monbro Sanitation, Superior Waste, Dennis Hickey, Frank Notarantonio, Salvatore Palopoli, and Anthony Montesano, Jr. Complaint ¶¶ 157–158.

... bribery" under Section 1961(1)(A). As such, these acts are properly pleaded as acts of racketeering.

 However, this part of the complaint also alleges acts of grand larceny in the third degree by certain named defendants.[28] "Larceny" is not listed in Section 1961(1)(A) among the state offenses that may constitute acts of racketeering.[29] Nonetheless, the government argues that it denoted these alleged instances of grand larceny in the complaint as "grand larceny ... *involving bribery*," complaint ¶ 154 (emphasis added); accordingly, the government argues, these are acts "involving ... bribery" under Section 1961(1)(A). This argument is not persuasive: The government has simply devised an offense that does not otherwise exist either in state law or in federal law—"grand larceny ... involving bribery"—in order to bring within the literal purview of Section 1961(1)(A) an offense—grand larceny—that is not otherwise an act of racketeering activity. If these alleged acts of grand larceny do in fact involve bribery, the government may plead them (as, indeed, it has) to be acts of bribery under Section 1961(1)(A).

The government refers the court to *Beth Israel Medical Center v. Smith*, 576 F.Supp. 1061 (S.D.N.Y.1983), as authority for its position. There, the plaintiffs alleged that the defendants had committed racketeering acts that were chargeable under New York Penal Law Section 190.65 and punishable by more than one year of imprisonment. The defendants argued that Section 190.65 refers only to the criminal offense of fraud, and they noted that fraud is not listed in Section 1961(1)(A). As here, the plaintiffs in *Beth Israel Medical Center* argued that the "defendants' violation of § 190.65 was accompanied by an act of bribery....'" *Beth Israel Medi-*

*cal Center*, 576 F.Supp. at 1065. Thus, the plaintiffs reasoned, the violation of Section 190.65 by the defendants was a predicate act under Section 1961(1)(A). The district court accepted the position of the plaintiffs:

> [The defendants] argue that the fact that bribery is alleged to have occurred in the course of the violation of § 190.65 does not convert that offense into an "act ... involving ... bribery" within the meaning of 18 U.S.C. § 1961(1)(A).... According to [the defendants], the statute refers to "act[s] ... involving ... bribery" (rather than to "bribery" only) to assure that violations of state statutes not specifically using the word "bribery" would be potential predicate RICO offenses as long as the offense falls into the generic category of bribery.

> • • • • •

> While [the defendants'] interpretation of the statute is not fanciful, we find more persuasive the argument that a state-law offense in which bribery is alleged to have played a major role, and which is punishable by more than a year's imprisonment, is an "act ... involving ... bribery" which may serve as a predicate RICO offense. The literal language of the statute supports this conclusion, and movants have cited nothing in the legislative history demonstrating that their more narrow interpretation of the statute is correct.

*Id.* at 1067.

The conclusion of *Beth Israel Medical Center*, however, is simply untenable. A "state-law offense in which bribery is alleged to have played a major role" *is simply bribery* (or whatever name the penal code of a particular state should happen to apply to conduct that is denoted in the law generally by the word "bribery"). To per-

---

**28.** These defendants are: AA & M Carting, Ace Garbage, All Weather Carting, Associated Waste, C & C Carting, Hickey's Carting, Monbro Sanitation, Salem Carting, Superior Waste, U–Need Corp., Vinnie Monte's Waste, Dennis Hickey, Anthony Montesano, Jr., Frank Notarantonio, Salvatore Palopoli, the Lucchese Family, the Gambino Family, Michael Acquafredda, Salvatore Avellino, Jr., Joseph Ferrante, Nicholas Ferrante, Michael Malena, Vincent Montesano,

John Pagano, Joseph Petrizzo, Robert Renna and Glenn Thweatt. Complaint ¶¶ 155–156.

**29.** "Robbery" is listed in Section 1961(1)(A); however, the government prudently does not argue that the New York grand larceny statute is cognizable as "robbery" within the meaning of Section 1961(1)(A).

mit a plaintiff to plead "fraud involving bribery" or "grand larceny ... involving bribery" as a predicate act is, at best, to legitimate careless pleading and thereby to frustrate the objectives of Rule 8(a). At worst, it is to allow a plaintiff to plead one transaction as two (or more) predicate acts: For instance, under *Beth Israel Medical Center*, a plaintiff could plead one action by a defendant to be both an act of "bribery" and an act of "fraud involving bribery"—for a total of two predicate acts.[30] Clever subdivision of a single event need not end with two predicates: Could not one act of bribery be distilled into bribery, "grand larceny ... involving bribery", and "fraud involving bribery"? On the reasoning of *Beth Israel Medical Center* ("the literal language of the statute supports this conclusion"), it is difficult to imagine a principled prohibition against such multiplication of predicate acts. The awkwardness of the *Beth Israel Medical Center* holding is clear.

**30.** Here, the government alleges that each instance in which a defendant bribed a worker at a town dump to permit the defendant to use disposal facilities without payment of the required fee constitutes both an act of bribery and an act of "grand larceny ... involving bribery." However, the government has enumerated these acts such that, in the final analysis, each pair of bribery and of "grand larceny ... involving bribery" only constitutes one racketeering act. For example, South Side Carting is alleged to have bribed a worker at a town dump in 1982 and to have committed "grand larceny ... involving bribery" at the same time. The first of these is designated as predicate act "318A," and the second is predicate act "318B." Supplement at 19. In other words, the government bifurcates one act of bribery into two acts "involving bribery"; the government then counts the two acts as one act of racketeering. The court is utterly at a loss to understand the rationale for this pleading practice.

**31.** The court notes that the defendants do not challenge the designation by the government of New York Penal Law Section 200.20 (rewarding official misconduct in the second degree) as an act "involving ... bribery" under Section 1961(1)(A). The silence of the defendants on this point is prudent: Unlike the New York offense of grand larceny, the formal elements of Section 200.20 leave little doubt that the offense of rewarding official misconduct falls within the scope of "bribery" as used in Section 1961(1)(A).

Thus, for the reasons indicated, those acts of racketeering activity that are predicated on "grand larceny ... involving bribery" are determined to be insufficient as a matter of law under Section 1961(1)(A). To the extent that those alleged acts of grand larceny do involve bribery—that is, to the extent that they are "state-law offense[s] in which bribery is alleged to have played a major role"—they should be pleaded as acts of bribery.[31] Accordingly, the "grand larceny ... involving bribery" predicate acts are dismissed.

Alleged racketeering acts 279 through 449 claim that certain defendants[32] took property from the town of Oyster Bay, New York "by unlawfully placing garbage in the Oyster Bay town dump, thereby taking garbage disposal space, without payment of the required fees"; that certain defendants[33] bribed employees of the town of Oyster Bay for reductions in dumping fees (or conferred gifts upon these employees as rewards for past favorable treat-

**32.** These defendants are: the Gambino Family, A–1 Carting, Ace Garbage, B & D Carting, Ciano Carting, Daniel Allen Carting, Delta Carting, Dependable Sanitation, Enviro Carting, Ever Ready Sanitation, Hillside Carting, MCM Sanitation, Monbro Sanitation, South Side Carting, Star Carting, Sun Carting, Sunset Sanitation, II Cousins Carting, U–Need Corp., Unique Sanitation, Vigliotti Carting, Vinnie Monte's Waste, V & J Rubbish, John Allen, Sarah Allen, James Allesandria, Vito Aniello, Joseph Bonsera, Michael Bonsera, Charles Cannizzaro, Pasquale Casagrande, Richard Ciano, Craig Comerford, Joseph Ferrante, Nicholas Ferrante, John Guglielmo, Robert Husak, Jerome Kowalski, Anthony Miello, Anthony Montesano, Jr., Vincent Montesano, Anthony Natale, Frank Palopoli, John Pagano, Ralph Pantony, Joseph Petrizzo, Joseph Pezza, Peter Reali, Peter Stramiello, Orlando Velocci, Arnold Vigliotti, Joseph Vittorio, Glen Vilchek, and James Winters. Complaint ¶¶ 160–161.

**33.** These defendants are: A–1 Carting, Ace Garbage, B & D Carting, Ciano CArting, Daniel Allen Carting, Delta Carting, Dependable Sanitation, Enviro Carting, Ever Ready Sanitation, Hillside Carting, MCM Sanitation, Monbro Sanitation, South Side Carting, Star Carting, Sun Carting, Sunset Sanitation, II Cousins Carting, U–Need Corp., Unique Sanitation, Vigliotti Carting, Vinnie Monte's Waste, V & J Rubbish, and Joseph R. Vittorio. Complaint ¶ 162.

ment); and that certain defendants [34] solicited these bribes and rewards. Complaint ¶¶ 160–163. Further, certain defendants [35] are alleged to have aided and abetted the briberies of the Oyster Bay employees. *Id.* ¶ 164. The complaint alleges that these acts are chargeable under New York Penal Law Sections 20.00 (criminal liability for conduct of another), 110.05 (attempt), 155.35 (grand larceny in the third degree), 200.00 (bribery in the third degree), 200.10 (bribe receiving in the third degree), 200.20 (rewarding official misconduct in the second degree), and 200.25 (receiving reward for official misconduct in the second degree). Each of these offenses is "punishable by imprisonment for more than one year" as required by Section 1961(1)(A). For the reasons set forth above with respect to racketeering acts 222 through 278, those racketeering acts that allege "grand larceny ... involving bribery" are dismissed; those racketeering acts that allege briberies and rewards of official misconduct are found to be properly pleaded.

■ Predicate acts of racketeering 450 through 472 concern alleged acts by certain defendants [36] to bribe two officials of the Department of Environment Control in Huntington, New York in order to influence votes on a proposed rate increase for carting in the town of Huntington; these predicates also concern alleged acts by defendants PSIA and James J. Corrigan, Jr. (who were allegedly aided and abetted by the defendants Lucchese Family, Long Island Rubbish, Salem Carting, Salvatore Avellino, Jr., Arthur Romersa, and Anthony Vespucci) to bribe a member of the Huntington town board to influence votes on a proposed rate increase for carting in the town of Huntington. Complaint ¶¶ 169–171. These acts are alleged to be

chargeable under New York Penal Law Sections 20.00 (criminal liability for conduct of another), 110.05 (attempt), 200.00 (bribery in the third degree), 200.10 (bribe receiving in the third degree), 200.20 (rewarding official misconduct in the second degree), and 200.25 (receiving reward for official misconduct in the second degree). Because the complaint properly pleads these acts as acts "involving ... bribery" that are chargeable under New York law and that are punishable by more than one year of imprisonment, they are properly pleaded as racketeering acts under Section 1961(1)(A).

The next unit of alleged racketeering acts in the complaint is that of acts 473 and 474. Here, the complaint alleges that the defendant C & C Carting (through an employee) bribed a public servant in order to secure a carting contract at Jones Beach State Park; the defendant Glenn Thweatt is alleged to have aided and abetted this bribery. Complaint ¶¶ 175–176. These acts are alleged to be punishable by imprisonment for more than one year in that they are alleged to be chargeable under New York Penal Law Sections 20.00 (criminal liability for conduct of another), 110.05 (attempt), and 200.03 (bribery in the second degree). As so pleaded, these acts may constitute racketeering activity.

In alleged predicate acts 475 through 484, the government claims that the defendants Peter Marcello, Metro Waste, and Mets Roll–Off bribed two public servants in order to obtain permits for the transportation and the incineration of medical waste on Long Island; the defendants Gambino Family and Joseph Petrizzo are alleged to have aided and abetted these briberies. Complaint ¶¶ 178–179. The complaint alleges that these acts are chargeable under

---

**34.** These defendants are: Craig Comerford, Jerome Kowalski, Peter Stramiello, and Joseph Vittorio. Complaint ¶ 163.

**35.** These defendants are: the Gambino Family, John Allen, Sarah Allen, James Allesandria, Vito Aniello, Joseph Bonsera, Michael Bonsera, Charles Cannizzaro, Pasquale Casagrande, Richard Ciano, Joseph Ferrante, Nicholas Ferrante, John Guglielmo, Robert Husak, Anthony Miello, Anthony Montesano, Jr., Vincent Montesano,

Anthony Natale, Frank Palopoli, John Pagano, Ralph Pantony, Joseph Petrizzo, Joseph Pezza, Pasquale Pezza, Peter Reali, Orlando Velocci, Arnold Vigliotti, Glen Vilchek, and James Winters.

**36.** These defendants are: the Lucchese Family, PSIA, Long Island Rubbish, Salem Carting, Salvatore Avellino, Jr., James J. Corrigan, Jr., and Anthony Vespucci.

New York Penal Law Sections 20.00 (criminal liability for conduct of another), 110.05 (attempt), 200.00 (bribery in the third degree), and 200.03 (bribery in the second degree); they are also alleged to be punishable by imprisonment for more than one year. As such, these alleged acts would clearly constitute racketeering activity under Section 1961(1)(A).

Alleged predicate act 485 states that the defendant Peter Marcello transported a stolen motor vehicle in interstate commerce; that act is alleged to be indictable under 18 U.S.C. §§ 2312 and 2. This is a properly pleaded racketeering act under Section 1961(1)(B). Finally, alleged predicate act 486 states that the defendant Peter Marcello damaged a motor vehicle by arson; that act is alleged to be punishable by more than a year in prison and to be chargeable under New York Penal Law Sections 110.05 (attempt) and 150.10 (arson in the third degree). This too, then, is an act that may be racketeering activity under Section 1961(1)(A).

Thus, as a brief summary, all 486 racketeering acts pleaded in the complaint are determined to have been pleaded properly under Section 1961(1) except for those that are alleged to be chargeable under the New York coercion statute or under the New York grand larceny statute; the acts that are alleged to be predicated on coercion or on "grand larceny ... involving bribery" are dismissed.

### 2. Relatedness and Continuity

As indicated above, the provision in Section 1961(5) as to "pattern of racketeering activity" does not envision the mere commission of two predicate acts within the time period specified by the statute; rather, Section 1961(5) "assumes that there is something to a RICO pattern *beyond* simply the number of predicate acts involved." *H.J. Inc.*, 492 U.S. at 238, 109 S.Ct. at 2900. That is:

> In normal usage, the word "pattern" ... would be taken to require more than just a multiplicity of racketeering predicates. A "pattern" is an "arrangement or order of things or activity," 11 Oxford English

Dictionary 357 (2d ed. 1989), and the mere fact that there are a number of predicates is no guarantee that they fall into any arrangement or order. It is not the number of predicates but the relationship that they bear to each other or to some external organizing principle that renders them "ordered" or "arranged."

*Id.* Therefore, "to prove a pattern of racketeering activity a plaintiff ... must show that the racketeering predicates are related, *and* that they amount to or pose the threat of continued criminal activity." *Id.* at 239, 109 S.Ct. at 2900. This requirement has become known in RICO parlance as "continuity plus relationship", and it is as essential to the establishment of the "pattern" element as the demonstration of the predicate acts themselves.

The Court in *H.J. Inc.*, however, found it easier to indicate that these are required sub-elements of the RICO "pattern" element than to delineate precisely what constitutes "continuity" or "relationship." As to the latter ("the easier to define," *id.* at 239, 109 S.Ct. at 2900), the Court stated that relationships among criminal acts may be shown by a demonstration that the acts have " 'the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.' " *Id.* at 240, 109 S.Ct. at 2901 (quoting 18 U.S.C. § 3575(e)); see also *Procter & Gamble*, 879 F.2d at 16 ("A pattern may be found ... from an examination of the interrelationship between acts including similarity of goals, methods of their accomplishment, repetitiousness, and closeness of temporal proximity."). This court adds the observation of the Second Circuit that "two racketeering acts that are not directly related to each other may nevertheless be related indirectly because each is related to the RICO enterprise." *United States v. Indelicato*, 865 F.2d 1370, 1383 (2d Cir.) (en banc), *cert. denied*, 493 U.S. 811, 110 S.Ct. 56, 107 L.Ed.2d 24 (1989).

Next, the Court in *H.J. Inc.* indicated that "continuity" is "both a closed- and

open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *H.J. Inc.*, 492 U.S. at 241, 109 S.Ct. at 2901. Thus:

> A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement.... Often a RICO action will be brought before continuity can be established in this way. In such cases, liability depends on whether the *threat* of continuity is demonstrated.

*Id.* at 242, 109 S.Ct. at 2902. In other words, "[a] RICO pattern may surely be established if the related predicates themselves involve a distinct threat of long-term racketeering activity, either implicit or explicit." *Id.* Further, "[t]he nature of the [RICO] enterprise may also serve to show the threat of continuing activity." *Indelicato*, 865 F.2d at 1383. That is:

> [T]he threat of continuity may be established by showing that the predicate acts or offenses are part of an ongoing entity's regular way of doing business. Thus, the threat of continuity is sufficiently established where the predicates can be attributed to a defendant operating as part of a long-term association that exists for criminal purposes.... The continuity requirement is likewise satisfied where it is shown that the predicates are a regular way of conducting defendant's ongoing legitimate business (in the sense that it is not a business that exists for criminal purposes), or of conducting or participating in an ongoing and legitimate RICO "enterprise."

*H.J. Inc.*, 492 U.S. at 242–43, 109 S.Ct. at 2902–03 (footnote omitted).

■ Therefore, under RICO, "continuity" denotes the concept that "separate events occur over time and perhaps threaten to recur," and "relatedness" denotes the concept that "there is a way in which [different racketeering acts] may be viewed as having a common purpose." *Procter & Gamble*, 879 F.2d at 17. As is apparent from these "definitions", however, the sub-elements of continuity and of relationship are primarily and emphatically fact-bound inquiries. See, e.g., *H.J. Inc.*, 492 U.S. at 242, 109 S.Ct. at 2902 ("Whether the predicates proved establish a threat of continued racketeering activity depends on the specific facts of each case."). Indeed, "continuity" and "relatedness" may even be proven by facts external to the racketeering acts themselves. *United States v. Kaplan*, 886 F.2d 536, 542 (2d Cir.1989), *cert. denied*, 493 U.S. 1076, 110 S.Ct. 1127, 107 L.Ed.2d 1033 (1990). Thus, only rarely will a complaint on its face fail to allege these sub-elements with such sufficiency that "it [will] appear[ ] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley*, 355 U.S. at 45–46, 78 S.Ct. at 101–102. On a motion to dismiss a RICO complaint under Rule 12(b)(6), then, "[t]he question that must be answered [with respect to relatedness] is whether [the] complaint adequately alleges facts from which it may be inferred that the predicate acts are interrelated...." *Procter & Gamble*, 879 F.2d at 17. And, as to continuity: "What is required is that the complaint plead a basis from which it could be inferred that the acts ... were neither isolated nor sporadic." *Id.* at 16 (quoting *Beauford*, 865 F.2d at 1391). See also *Jacobson*, 882 F.2d at 720.

In order, then, to verify the adequacy of the forty-four substantive RICO claims of this complaint, it is necessary to inquire into the adequacy of the pleading of the pattern element as to each named defendant.[37] That is, each defendant named in

---

**37.** The tenor of the argument of the government as to the sufficiency with which it has pleaded the pattern element suggests that the government mistakenly believes that it need only establish that all the predicate acts—considered together—constitute a pattern. See, e.g., Memo-

randum of Government at 56 ("In the present action, most of the predicate acts of racketeering activity are alleged to have been committed between November 1981 and January 1989, a period of over seven years. Defendants cannot refute that this is a sufficiently 'substantial peri-

these forty-four counts [38] must be alleged to have committed at least two predicate acts, and those predicate acts must be alleged to constitute a pattern by virtue of their relatedness and their continuity. For these purposes, of course, the court will not consider those racketeering acts that have been found to be inadequately pleaded.

The complaint alleges that each of thirty-one defendants [39] committed as acts of racketeering three briberies in the town of Oyster Bay. Complaint ¶ 162. For each of the substantive RICO claims in which any one of these defendants is named, the complaint alleges that these acts constituted a pattern. Id. ¶¶ 202 (first claim), 207 (second claim), 218 (fourth through forty-fourth claims, as applicable). As alleged, the briberies are sufficiently similar in purposes, results, and methods as to provide a basis for an inference of relatedness. Also, because the pleaded acts are alleged to have been committed over a substantial period of time—that is, several years—there is a basis for inferring continuity. As such, the complaint adequately alleges that each of these defendants engaged in a pattern of racketeering activity.

The complaint also alleges that 16 defendants [40] each committed as racketeering acts five violations of the Hobbs Act against the Kubeckas. Id. ¶ 139(1)–(5). For each of the substantive RICO claims in which any one of these defendants is named, the complaint alleges that these five acts constitute a pattern. Id. ¶¶ 202 (first claim), 207 (second claim), 212 (third claim), and 218 (fourth through forty-fourth claims, as applicable). These five acts are alleged to have the same purposes, victims, and methods, and there is thus a basis from which to infer relatedness. Moreover, they are alleged to have been committed over approximately two years; thus, there is a basis from which to infer continuity. For these reasons, the allegation of the pattern element against these defendants is adequate.

Similarly, the complaint alleges that each of 27 defendants [41] committed predicate acts that included either the three acts of briberies in Oyster Bay or the five Hobbs Act violations directed at the Kubeckas. Id. ¶¶ 139(1)–(5), 140, 150, 152, 153, 157, 158, 162, 164, 169, 170, 171, 178, and 179. Furthermore, for each substantive RICO claim in which one of these defendants is named, the complaint alleges that this racketeering activity formed a pattern. Id.

od of time' to establish continuity."). Of course, the government must in fact plead and prove that the predicate acts as committed by *each* defendant constitute a pattern of racketeering activity.

38. The following defendants are not named in any of the substantive RICO counts: Budget Roll–Off, Comet Carting, Prudential Waste, SSC Corporation, TWA Carting, Richard Carey, John Maratea, David Pamlanye, Steven Pamlanye, John Senia, Allen Vesting, and Michael Walstrum. Further, the following defendants are no longer parties to this action: the Lucchese Family, the Gambino Family, All Weather Carting, Pasquale Casagrande, Antonio Corallo, Jerome Kowalski, Salvatore Santoro, Peter Stramiello, and Joseph Vittorio. Accordingly, the adequacy of the complaint as to the "pattern" element will not be examined with respect to these twenty-one defendants.

39. These defendants are: Ace Garbage, B & D Carting, Ciano Carting, Daniel Allen Carting, Dependable Sanitation, Ever Ready Sanitation, Hillside Carting, South Side Carting, Star Carting, Sunset Sanitation, II Cousins Carting, U–

Need Corp., Vigliotti Carting, V & J Rubbish, John Allen, Sarah Allen, James Allesandria, Vito Aniello, Joseph Bonsera, Michael Bonsera, Richard Ciano, Craig Comerford, John Guglielmo, Robert Husak, Anthony Natale, John Pagano, Frank Palopoli, Peter Reali, Orlando Velocci, Arnold Vigliotti, and James Winters.

40. These defendants are: Detail Carting, Harbor Carting, Maggio's Carting, Sail Carting, Standard Cartage, Wayside Carting, Bernard Adelstein, Salvatore Avellino, Jr., Richard Colatosti, Edward DeMatteo, Ernest DeMatteo, John Haynes, Vincent Maggio, Thomas Ronga, Franco Rotundo, and Robert Schuman.

41. These defendants are: PSIA, Local 813, A–1 Carting, Delta Carting, Enviro Carting, Jamaica Ash, MCM Carting, Monbro Sanitation, Salem Carting, Sun Carting, Unique Sanitation, Vinnie Monte's Waste, Charles Cannizzaro, James J. Corrigan, Jr., Emedio Fazzini, Joseph Ferrante, Nicholas Ferrante, Anthony Miello, Anthony Montesano, Jr., Vincent Montesano, Ralph Pantony, Joseph Petrizzo, Joseph Pezza, and Pasquale Pezza, Arthur Romersa, Anthony Vespucci, and Glenn Vilchek.

¶¶ 202 (first claim), 207 (second claim), 212 (third claim), and 218 (fourth through forty-fourth claims, as applicable). Again, for the reasons indicated above with respect to the other defendants who are named in the predicate acts that allege either briberies in Oyster Bay or Hobbs Act violations directed at the Kubeckas, the pattern element has been adequately pleaded for these defendants.

■■■ The complaint alleges that the defendant Associated Waste committed two acts of racketeering. *Id.* ¶ 157 (two acts of bribery). The two substantive RICO claims that name Associated Waste allege that these acts constitute a pattern. *Id.* ¶¶ 202 (first claim) and 207 (second claim). Because of the similarity of their objectives, these acts may be demonstrated to be related. However, these acts are alleged to have occurred on September 9, 1985 and on September 16, 1985—only a few days apart from each other. Supplement at 5. As pleaded, the complaint may at first appear to provide no basis for an inference that these two acts—"extending over [only one] week[ ]," *H.J. Inc.*, 492 U.S. at 242, 109 S.Ct. at 2902—pose a threat of future criminal conduct. However, as indicated, above, the government *may* be able to demonstrate that these two acts involved a threat of continuing activity; for example, the government might demonstrate that these acts were a "regular way" of the conduct of "the defendant's ongoing legitimate business." *H.J. Inc.*, 492 U.S. at 243, 109 S.Ct. at 2902–03. For this reason, it cannot be concluded "beyond doubt" that the government can prove no facts that would establish a threat of continuity for these predicate acts. As such, the allegations as to the pattern element are adequate as to the defendant Associated Waste.

The complaint further alleges that the defendants Frank Notarantonio, Superior Waste, Salvatore Palopoli, Hickey's Carting, and Dennis Hickey each committed between three and five acts of racketeering involving bribes paid to officials in the town of Islip, New York. Complaint ¶ 157. Moreover, each of the substantive RICO counts in which one or more of these defendants is named alleges that these acts constituted a pattern of racketeering activity as to each defendant. *Id.* ¶¶ 202 (first claim), 207 (second claim), and 218 (fourth through forty-fourth claims, as applicable). As alleged, these acts are sufficiently similar in purpose and in method to support an inference of relatedness. As to continuity, the court notes that, at the low end, the defendant Frank Notarantonio is alleged to have committed only three of the briberies, and these are alleged to have been committed within a few months (between June of 1985 and September of 1985). Even so, the court determines that three predicate acts over a period of four months may bear a sufficient threat of continued criminal conduct insofar as the government could demonstrate, for example, "that the predicates are a regular way of conducting the defendant's ongoing legitimate business." *H.J. Inc.*, 492 U.S. at 243, 109 S.Ct. at 2902–03. Thus, a fortiori, the allegations that the other defendants committed four or five bribes within this time period are also adequate. Accordingly, the court finds that the pattern element has been adequately pleaded as to each of these defendants.

Similarly, the complaint alleges two acts of racketeering each by the defendants Metro Waste and Mets Roll–Off. Complaint ¶ 178 (two acts of bribery). The two substantive RICO counts in which these defendants are named each allege that these two acts constitute a pattern as to each defendant. *Id.* ¶¶ 202 (first claim) and 207 (second claim). These acts, as alleged, are sufficiently similar as to form a basis for an inference of relatedness. Furthermore, although they are alleged to have been committed within a few months, the briberies appear to have been directed at securing a particular business opportunity for the defendants. As such, the government may be able to demonstrate that these acts exhibit a threat of continuity insofar as they reflect "a regular way of conducting [the defendants'] ongoing legitimate business[es]." As such, the allegations of pattern are adequate as against Metro Waste and Mets Roll–Off.

■ The complaint next alleges that the defendant Long Island Rubbish committed three acts of racketeering. Complaint ¶¶ 169–170 (three acts of bribery). Both substantive RICO counts in which this defendant is named allege that these three bribes constitute a pattern. *Id.* ¶¶ 202 (first claim) and 207 (second claim). As bribes, the acts are sufficiently similar to furnish a basis for relatedness. Further, they are alleged to have occurred over sixteen months; thus, continuity may be inferred. For these reasons, a pattern of racketeering activity has been adequately pleaded as to Long Island Rubbish.

■ The defendant Peter Marcello is alleged to have committed four acts of racketeering. *Id.* ¶¶ 178 (two acts of bribery), 181 (interstate transportation of stolen vehicle), and 185 (arson). The four substantive RICO counts that name Marcello allege that these acts were a pattern. *Id.* ¶¶ 202 (first claim), 207 (second claim), and 218 (twenty-fifth and twenty-sixth claims). These acts are alleged to have the common purpose of facilitating the control of the carting industry by the carting cartel; further, they are alleged to have occurred over several years. As such, these four acts furnish a basis on which relatedness and continuity may be inferred, and the required RICO element of pattern has been properly pleaded as to Peter Marcello.

Next, the complaint alleges that AA & M Carting and Michael Acquafredda each committed only one properly pleaded act of racketeering. *Id.* ¶ 152 (violation of Hobbs Act).[42] Accordingly, the complaint does not allege a pattern of racketeering activity as to AA & M or as to Michael Acquafredda, and the substantive RICO claims in which either of them is named as a defendant (the first, the second, and the fifth claims for relief) must be dismissed as against them.

The complaint alleges only one properly pleaded act of racketeering each by C & C Carting and by Glenn Thweatt. Complaint ¶¶ 174–176 (bribery). For this reason, the substantive RICO claims in which either C & C Carting or Glenn Thweatt is named (the first, the second, and the tenth claims) are dismissed as against those defendants.

■ Next, the complaint alleges only two racketeering acts by the defendant Pat Sesti. *Id.* ¶¶ 145, 147 (two violations of Hobbs Act). The substantive RICO counts in which Sesti is named as a defendant allege that these acts constituted a pattern. *Id.* ¶¶ 202 (first claim) and 207 (second claim). However, the complaint does not provide a clear time period during which those two predicate acts were alleged to have occurred; it is impossible, then, even to begin to evaluate whether or not continuity may be inferred. For this reason, the first and the second claims for relief are dismissed without prejudice as against the defendant Pat Sesti.

Finally, the complaint alleges no properly pleaded racketeering acts against the defendants Michael Malena and Robert Renna. Accordingly, the substantive RICO claims in which either one is named as a defendant (the first, the second, and the thirtieth claims) must be dismissed as against them.

To summarize, then, the complaint adequately pleads the required RICO element of "pattern of racketeering activity" as to each of the defendants named in the 44 substantive RICO claims for relief except the following: AA & M Carting, C & C Carting, Michael Acquafredda, Michael Malena, Robert Renna, Pat Sesti, and Glenn Thweatt. The substantive RICO claims for relief are thus dismissed as against these seven defendants.

---

**42.** Actually, the pleadings of the government are ambiguous as to whether these defendants committed only one violation of the Hobbs Act against Apple Carting or several such violations of the Hobbs Act. On the one hand, paragraph 152 of the complaint lists at least two separate instances of conduct that could constitute violations of the Hobbs Act. On the other hand, the supplement to the complaint filed by the government for the purposes of clarification records these events as only one numbered predicate act. See Supplement at 3. The court will proceed on the assumption that this clarifying supplement accurately reflects the position of the government and that, accordingly, only one predicate Hobbs Act violation is pleaded against each of these defendants.

### C. *Nexus between Pattern and Enterprise*

■ It is not enough for a violation of Section 1962(c) that a defendant have been "employed by or associated with" a RICO enterprise; nor is it enough that he engaged in a "pattern of racketeering activity." Rather, a defendant, in order to incur liability for a substantive RICO offense, must "conduct or participate ... in the conduct of such enterprise's affairs *through* a pattern of racketeering activity...." As the Second Circuit has remarked of Section 1962(c): "Simply committing predicate acts which are unrelated to the [RICO] enterprise or [to] one's position within it would be insufficient." *United States v. Scotto*, 641 F.2d 47, 54 (2d Cir.1980), *cert. denied*, 452 U.S. 961, 101 S.Ct. 3109, 69 L.Ed.2d 971 (1981). Hence:

> [O]ne conducts the activities of an enterprise through a pattern of racketeering when (1) one is enabled to commit the predicate offenses solely by virtue of his position in the enterprise or involvement in or control over the affairs of the enterprise, or (2) the predicate offenses are related to the activities of that enterprise.

*Id.* See also *United States v. Tillem*, 906 F.2d 814, 822 (2d Cir.1990) (quoting *Scotto*). However, this "nexus" between the RICO enterprise in which a defendant allegedly participated and the pattern of racketeering activity which he is alleged to have committed does not require proof that the defendant advanced the affairs of the enterprise, that the enterprise itself is corrupt, or that the enterprise authorized the defendant to perform the racketeering acts. *Scotto*, 641 F.2d at 54. Rather, the "nexus" element " 'requires only that the [plaintiff] establish that the defendant's acts were committed in the conduct of the ... affairs [of the enterprise].' " *Id.* (quoting *United States v. Field*, 432 F.Supp. 55, 58 (S.D.N.Y.1977), *aff'd*, 578 F.2d 1371 (2d Cir.), *cert. denied*, 439 U.S. 801, 99 S.Ct. 43, 58 L.Ed.2d 94 (1978)). As such, it is not necessary that the plaintiff establish that the defendant "solidif[ied] or otherwise enhance[d] his position in the enterprise through the commission of the predicate offenses." *Id.*

■ As with the "relatedness" and the "continuity" requirements of the "pattern" element, the "nexus" element of Section 1962(c) is almost entirely a factual matter which, for the most part, must await the presentation of proof either at trial or on an appropriate motion for summary judgment. The plaintiff's allegations as to "nexus" must be radically deficient in order to merit dismissal at the pleading stage. Here, the government has alleged that each of the charged RICO enterprises had the purpose of establishing and maintaining control over the solid waste disposal industry on Long Island. Complaint ¶¶ 132 (PSIA enterprise), 133 (carting industry enterprise), 134 (corporate enterprises), and 135 (Local 813 enterprise). As pleaded, each alleged racketeering act was intended to further the purpose of at least one RICO enterprise: For example, each Hobbs Act violation was intended to frustrate competition with the cartel by rebel carters, and each act of bribery was intended to secure commercial advantages for the cartel members. Such allegations are sufficient to plead that "the predicate offenses are related to the activities of [the RICO] enterprise." Thus, the government has, in its complaint, laid a foundation for the demonstration of the required "nexus" between the alleged enterprises and the alleged patterns of racketeering; as such, it is not the case that the court may conclude "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley*, 355 U.S. at 45–46, 78 S.Ct. at 101–102. Accordingly, the complaint is adequate as to its allegations of the "nexus" element of Section 1962(c).

To summarize, then, the 44 substantive RICO claims of the complaint are found to be sufficient in all respects except the following: First, the predicate acts that allege violations of the New York coercion statute or of the New York grand larceny statute are inadequate; second, the allegations of pattern are inadequate as to the defendants AA & M Carting, C & C Carting, Michael Acquafredda, Michael Malena, Robert Ren-

na, Pat Sesti, and Glenn Thweatt. Accordingly, the first, second, fifth, tenth, and thirtieth claims for relief are dismissed as against these seven defendants.

## III. THE RICO CONSPIRACY CLAIMS

The forty-fifth claim for relief alleges that almost all the defendants [43] "conspired to violate the provisions of Title 18, United States Code, Section 1962" through the PSIA enterprise. Complaint ¶¶ 221–225. Similarly, the forty-sixth claim for relief alleges that all named defendants "conspired to violate the provisions of Title 18, United States Code, Section 1962" through the carting industry enterprise. *Id.* ¶¶ 226–229. The defendants challenge the adequacy of these allegations.

■■■ Conspiracy to violate the substantive provisions of RICO is proscribed by 18 U.S.C. § 1962(d):

It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

The complaint indicates that the defendants are alleged to have conspired to violate Section 1962(c). Complaint ¶¶ 186 (conspiracy through PSIA enterprise) and 187 (conspiracy through carting industry enterprise). Hence, the defendants are alleged to have conspired to have conducted or to have participated in the conduct of the affairs of an enterprise through a pattern of racketeering activity. The Second Circuit has noted that "the agreement proscribed by section 1962(d) is conspiracy to participate in a charged enterprise's affairs, not conspiracy to commit predicate acts." *Persico*, 832 F.2d at 713. Nonetheless, "proof of a RICO conspiracy requires a demonstration that a defendant agreed to commit two or more predicate acts...." *Id.* Thus:

[To demonstrate a RICO conspiracy, the plaintiff must show] that the defendant agree[d] to commit the substantive racketeering offense [here, Section 1962(c)] through agreeing to participate in two predicate acts ... and that he [knew] the general nature of the conspiracy and that the conspiracy extend[ed] beyond his individual role.

*United States v. Rastelli*, 870 F.2d 822, 828 (2d Cir.), *cert. denied*, 493 U.S. 982, 110 S.Ct. 515, 107 L.Ed.2d 516 (1989). See also *Minicone*, 960 F.2d at 1108. ("To prove a RICO conspiracy under § 1962(d), the government must show that the defendant agreed to participate in two predicate racketeering acts and [that] he knew that the general nature of the conspiracy extended beyond his individual role."). Thus, in the context of a conspiracy to violate Section 1962(c)—as is alleged here—"[e]ach member of [the] RICO conspiracy need only conspire to participate in the affairs of the alleged enterprise through two predicate crimes." *United States v. Friedman*, 854 F.2d 535, 561 (2d Cir.1988), *cert. denied*, 490 U.S. 1004, 109 S.Ct. 1637, 104 L.Ed.2d 153 (1989). Further, it is clear that those "two predicate crimes" must, as with every other RICO violation, constitute a pattern of racketeering activity. *Ruggiero*, 726 F.2d at 923 (RICO conspiracy requires that defendant conspire to commit predicate offenses that constitute pattern of racketeering activity). See also *H.J. Inc.*, 492 U.S. at 232, 109 S.Ct. at 2897 ("*Each* prohibited activity is defined in 18 U.S.C. § 1962 to include, as one necessary element, proof either of a 'pattern of racketeering activity' or of 'collection of an unlawful debt.'") (emphasis added). Finally, a defendant must "agree[ ] personally to commit, or to aid and abet the commission of, the two acts of racketeering...." *Rastelli*, 870 F.2d at 832.[44]

---

**43.** The forty-fifth claim for relief names all the defendants *except* the following: PSIA, Local 813, Bernard Adelstein, Richard Carey, Craig Comerford, Antonio Corallo, James J. Corrigan, Jr., Jerome Kowalski, John Maratea, David Pamlanye, Steven Pamlanye, Arthur Romersa, John Senia, Pat Sesti, Anthony Vespucci, Allen Vesting, Joseph Vittorio, and Michael Walstrum.

**44.** The language used by the Second Circuit to describe the conduct necessary to violate Section 1962(d) raises an interesting problem in itself. The court has indicated that a defendant is liable for a RICO conspiracy if he "agrees personally to commit" two predicate acts. The placement of the adverb "personally" does not indicate clearly whether the adverb modifies the verb "agrees" or the infinitive "to commit."

■ An allegation that a defendant *committed* two predicate acts is not sufficient to plead a RICO conspiracy: "[T]he commission of the acts is distinct from an agreement to commit them, and a violation of § 1962(d) requires different proof from a violation of § 1962(c)." *Bonanno*, 683 F.Supp. at 1440; see also *Lazzaro v. Manber*, 701 F.Supp. 353, 372 (E.D.N.Y.1988) ("Although it is possible to read the complaint so as to find two or more predicate acts by each RICO defendant, the commission of the acts is distinct from the agreement to commit them."). Thus, to the extent the government implies that its allegations as to the commission of predicate acts by many of the defendants are adequate to state a claim for RICO conspiracy as to those defendants, see Memorandum of Government at 93, its position is entirely without merit.

■ Finally, an allegation concerning conspiracy is held to the same standards under Rule 8(a) that are applicable to any other allegations in a civil complaint: That is, an allegation concerning conspiracy must put the defendant on notice of the claim against him. However, "[b]y definition, civil RICO actions involve multiple defendants, and the notice function [of Rule 8(a)] cannot be served unless the complaint is specific enough *to identify individual defendants with individual acts.*" Wright & Miller, Federal Practice and Procedure: Civil 2d § 1233 (emphasis added). As stated in *Bonanno*, 683 F.Supp. at 1439–40: "Conclusory allegations or a 'bare bones statement' of conspiracy will not withstand a motion to dismiss, and sufficient facts must be alleged to allow the defendant to form a response." Of course, such specificity also enables the court to determine whether or not the complaint adequately pleads the pattern ele-

ment of Section 1962(d). Wright & Miller at § 1233.

■ The complaint alleges that each of the defendants named in count forty-five "agreed to commit two or more predicate acts." Complaint ¶ 186. It also alleges that each of the defendants named in count forty-six (that is, all the defendants named in this action) "agreed to commit two or more predicate acts." *Id.* ¶ 187. However, in almost every case, no one defendant is put on notice as to which particular predicate acts he is alleged to have agreed to commit. For example, the complaint states that thirty-nine of the defendants—including, for example, the defendant A–1 Carting—"together with others known and unknown, conspired and agreed to commit multiple acts of extortion against Jerry Kubecka and Robert Kubecka as is more fully set forth in Count I of Indictment No. 2626–83 (Exhibit A), Count I of Indictment No. 1472–84 (Exhibit B), and Count I of Indictment No. 1479–84 (Exhibit C)." *Id.* ¶ 188. Thus, although this passage of the complaint alleges that a particular defendant—for example, the defendant A–1 Carting—"agreed to commit multiple acts of extortion," the complaint does not put A–1 Carting on notice as to what those acts are that it is alleged to have agreed to commit. And, as indicated above, that A–1 Carting is alleged to have *committed* nine predicate acts, *id.* ¶¶ 139(1)–(5), 152, and 162, is irrelevant to whether the complaint adequately pleads that A–1 Carting *agreed* to commit those (or any other) predicate acts.

Similarly, almost all the other conspiracy allegations fail to indicate particular predicates that defendants are said to have agreed to commit. See *id.* ¶¶ 189 (agreement to commit "other multiple acts of

---

Thus, it is not clear whether the defendant must be a personal participant in the agreement to commit two predicate acts (that is, that he *"personally* agree to commit") or whether he must also agree that he himself will personally partake of the commission of the predicate acts (that is, that he "agree *personally* to commit"). On the other hand, normal principles of conspiracy liability do not require that a defendant agree to be a person-

al participant in the commission of the object offense. On the other hand, passages in several RICO conspiracy cases would appear to require an agreement by the defendant that he himself will undertake the commission of two predicates. See, e.g., *Rastelli*, 870 F.2d at 828 (defendant must "agree[ ] to participate in two predicate acts"); *Minicone*, 960 F.2d 1108 (defendant must "agree[ ] to participate in two predicate racketeering acts").

extortion against Jerry Kubecka and Robert Kubecka"); 190 (agreement to commit "multiple acts of extortion against Reuter, Inc."); 191 (agreement to commit "multiple acts of extortion against Apple Carting"); 192 (agreement to commit "multiple acts of bribery, grand larceny involving bribery, and bribe receiving in the Town of Islip"); 193 (agreement to commit "multiple acts of bribery, grand larceny involving bribery, and bribe receiving in the Town of Oyster Bay"); 194 (agreement to commit "multiple acts of bribery and bribe receiving in the Town of Huntington"); and 196 (agreement to commit "multiple acts of bribery of public servants in an effort to obtain permits necessary to transport and incinerate medical waste"). Indeed, the court notes that these allegations suffer from the same ambiguities that rendered the substantive RICO allegations incomprehensible before the government corrected those deficiencies through the filing of the 70–page complaint supplement. Unfortunately, the government apparently chose to do through that filing the minimum requested of it by the court, and, thus, the inadequacies of the RICO conspiracy allegations have simply been repeated in the supplement—as well as in the motion papers submitted by the government. See Memorandum of Government at 95 ("Paragraphs 188 through 199 provide further detailed information about the specific acts committed [sic] by the defendants as part of the conspiracies alleged...."). Indeed, in a moment of candor, the government appears to recognize that its conspiracy allegations are so vague and so undifferentiated as to evade analysis. *Id.* at 95–96.

The complaint does allege that the "defendants C & C Carting and Glenn Thweatt ... conspired and agreed to commit bribery of a public servant at Jones Beach State Park." This allegation sufficiently correlates those defendants to the act that they are alleged to have conspired to commit; as such, it is sufficient under Rule 8(a). However, there are no other adequate allegations in the complaint that these two defendants agreed to commit any other predicate act. Clearly, the RICO conspiracy claims cannot be maintained against C & C Cart-

ing and Glenn Thweatt on the basis of only one allegation that they agreed to commit one predicate act; the forty-fifth and the forty-sixth claims for relief must therefore be dismissed as against these two defendants.

Next, the complaint does set forth an adequate allegation as to one defendant— Peter Marcello. Marcello is alleged to have "conspired and [to have] agreed to commit interstate transportation of a stolen vehicle" and to have "conspired and [to have] agreed to commit arson of [a] motor vehicle." *Id.* ¶¶ 197–198. Because the complaint clearly sets forth two particular predicate offenses which he is alleged to have agreed to commit, the complaint adequately pleads this element of a RICO conspiracy as against him. However as to all the other defendants named in this action, the text of the complaint itself does not adequately plead the RICO conspiracy element of agreement to commit two predicate acts.

The state indictments submitted as exhibits to the complaint do little more to correlate particular predicate acts to particular defendants and thereby to salvage the RICO conspiracy claims: For the most part, reference to those indictments does not indicate the specific two (or more) predicate acts that each defendant is alleged to have agreed to commit. Thus, the New York State indictments numbered 2626–83 (exhibit A to complaint), 1472–84 (exhibit B to complaint), 1497–85 (exhibit E to complaint), and 63786 (exhibit F to complaint) each charge several of the defendants named in this action with the New York offense of conspiracy. However, each of these indictments sets forth several object offenses for each charged conspiracy, and none of the indictments indicates which specific offense any one defendant is alleged to have agreed to commit. That is, these indictments do not provide a clear basis for pleading in this action that any of the defendants agreed to commit any particular predicate act. Additionally, count one of the indictment numbered 1479–84 (exhibit C to complaint) charges that the defendant Arthur Romersa committed the

offense of official misconduct, but it does not provide any basis for pleading that Romersa *agreed* to commit that act or any other act.

The New York State indictments numbered 1473–84 (exhibit D to complaint), 1475–84 (exhibit G to complaint), 1477–84 (exhibit H to complaint), and 1476–84 (exhibit I to complaint) each allege conspiracies to commit only one object offense. As such, these exhibits provide adequate notice to each of the defendants named in those indictments that they are alleged to have agreed to commit the particular predicate acts listed in those indictments. Thus, the complaint conforms in this respect to the requirements of Rule 8(a) as to the following defendants: PSIA (agreements as to two acts of bribery, exhibits G and H); James J. Corrigan, Jr. (agreements as to two acts of bribery, exhibits G and H); Pat Sesti (agreement as to one violation of Hobbs Act, exhibit D); Anthony Vespucci (agreement as to one act of bribery, exhibit G); Salvatore Avellino, Jr. (agreement as to one act of bribery, exhibit G); and Arthur Romersa (agreement as to one act of bribe receiving, exhibit I). Of these, however, agreements to commit two predicates are attributed only to PSIA and to James J. Corrigan, Jr. Hence, the complaint exhibits do not set out a basis for pleading RICO conspiracy claims against Pat Sesti, Anthony Vespucci, Salvatore Avellino, Jr., and Arthur Romersa. Therefore, the complaint (with exhibits) properly alleges agreements to commit at least two predicate acts only as to the following defendants: PSIA, James J. Corrigan, Jr., and Peter Marcello. Accordingly, the forty-fifth and the forty-sixth claims for relief must be dismissed as against all other defendants.

Finally, the complaint does not at any point set out a basis for an inference that the predicate offenses which the defendants are alleged to have agreed to commit constitute a pattern of racketeering activity as to any one defendant. Indeed, the complaint does not even allege that the two predicate acts with respect to which any defendant allegedly entered into agreements constitute a pattern. See complaint ¶¶ 186–87, 223, and 227 ("[E]ach of the

aforesaid defendants has been and currently is a party to an unlawful agreement, and each of the aforesaid defendants pursuant to said agreement has agreed to commit two or more predicate acts."). Without even an allegation (much less an adequately pleaded factual basis) that each defendant agreed to commit two predicate acts and that those "predicate offenses constituted a pattern of racketeering activity," *Ruggiero*, 726 F.2d at 923, the complaint fails to allege an essential element of the Section 1962(d) cause of action. For this reason, the forty-fifth and the forty-sixth claims for relief are dismissed as against all defendants.

A final observation must be made regarding the state indictments appended to the complaint as exhibits. Reference has already been made to the fact that this 132–page complaint required a 70–page supplement, prepared at the direction of the court, to render intelligible the allegations against the defendants. The enormous burden imposed on the court by that prolix and convoluted pleading was compounded by its incorporation of those ten state indictments—many of which are of comparable complexity. This sort of gargantuan pleading cannot be condemned too strongly. If, indeed, ten New York State indictments—aimed at essentially the same conduct and directed at a substantial number of the defendants in this action—were returned and prosecuted, it may legitimately be asked why this proceeding was necessary at all.

## IV. REMEDIES FOR RICO VIOLATIONS

The complaint seeks essentially three forms of remedies for the RICO violations charged in the first forty-six claims for relief: damages, injunctions, and divestiture. The defendants have raised challenges to all three aspects of the relief sought. Fundamental to such challenges, however, is the limiting proposition that "a complaint should not be dismissed for legal insufficiency except where there is a failure to state a claim upon which *some* relief, not limited by the request in the complaint,

can be granted." *Bonanno,* 683 F.Supp. at 1442 (quoting *Norwalk CORE v. Norwalk Redevelopment Agency,* 395 F.2d 920, 925–26 (2d Cir.1968)).

### A. *Monetary Relief*

▮ In the forty-seventh claim for relief, the complaint seeks treble damages for the substantive RICO violations alleged in the first forty-four claims for relief. Complaint ¶ 234. The government also seeks costs and attorney's fees. *Id.* "Wherefore" Clause ¶ J(2). Section 1964(c) of Title 18 of the United States Code—the provision under which the monetary relief is sought—provides in full:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

However, this court has previously determined that "the United States government does not have standing to sue for damages to its business or property" under Section 1964(c), *Bonanno,* 683 F.Supp. at 1456, and the Second Circuit has affirmed this determination, *Bonanno,* 879 F.2d at 27. Accordingly, the forty-seventh claim for relief must be dismissed as against all defendants.

### B. *Injunctive Relief*

▮ The first forty-six claims seek injunctive relief against the defendants for the alleged violations of Section 1962(c) and of Section 1962(d). Essentially, these claims request that the defendants "be enjoined from participating in any way in the carting industry." See Complaint ¶¶ 204 (first claim), 209 (second claim), 214 (third claim), 220 (fourth through forty-fourth claims), 225 (forty-fifth claim), and 229 (forty-sixth claim). However, the specific parameters of the injunctive relief sought by the government are more clearly set forth elsewhere in the complaint. That is, the government seeks to enjoin:

> the individual defendants from engaging in activities involving or connected with the collection, transportation, or disposal of solid waste[;]

> all defendants from violating, aiding or abetting the violation of, and conspiring to violate any [RICO] provisions[;]

> the individual defendants from associating with any other defendant, or with members or associates of organized crime, for any commercial purpose[;]

> the corporate defendants from associating with the Gambino Family, the Lucchese Family, or any individual defendant for any reason ... and [to enjoin] the corporate defendants from associating with any other corporate defendant for any commercial purpose, unless and until all individual defendants have divested themselves of all interests in all corporate defendants so associating[;]

> all individual defendants from participating in any way in the affairs of PSIA, the PSIA Board of Directors, Local 813, the Local 813 Executive Board, or the Local 813 Pension, Insurance, Officers' Retirement, or Severance and Retirement Trust Funds[;]

> [and the] defendants PSIA and Local 813 from associating for any reason with any member or associate of organized crime, including but not limited to members or associates of defendants Lucchese or Gambino Family, and from associating for any reason with any of the individual defendants.

Complaint "Wherefore" Clause ¶¶ A–F. Further, the government asks this court to remove "Bernard Adelstein from his position in Local 813" and to remove "James J. Corrigan, Jr. from his position in defendant PSIA." *Id.* "Wherefore" Clause ¶¶ G–H. Finally, the complaint requests that the court "appoint a Trustee to direct and control all day-to-day operations of PSIA, and to report periodically to the Court, until such time as all individual defendants have divested themselves of all interests in all corporate members of PSIA, and until such time as PSIA is purged of all racketeering influence and returned to the control of its membership." *Id.* "Wherefore" Clause ¶ H.

In their challenge to the appropriateness of this injunctive relief, the defendants correctly characterize the injunctions sought by the government as expansive. However, the provisions of RICO do envision a wide range of remedial mechanisms in civil RICO actions. Section 1964(a) provides:

> The district courts of the United States shall have jurisdiction to prevent and restrain violations of section 1962 of this chapter by issuing appropriate orders, including, but not limited to: ordering any person to divest himself of any interest, direct or indirect, in any enterprise; imposing reasonable restrictions on the future activities or investments of any person, including, but not limited to, prohibiting any person from engaging in the same type of endeavor as the enterprise engaged in, the activities of which affect interstate or foreign commerce; or ordering dissolution or reorganization of any enterprise, making due provision for the rights of innocent persons.

As this court has had occasion to observe before, Section 1964(a) empowers a district court "to enter reasonable injunctions against RICO violators" and to restrict "their future business activities." *Bonanno*, 683 F.Supp. at 1441. To the extent, then, that the injunctive relief sought by the government in this case would impose limitations on the commercial endeavors of these defendants, the remedies are not unavailable to the government as a matter of law. Rather, Section 1964(c) clearly contemplates that a court, in appropriate circumstances, may prohibit RICO defendants from engaging in certain forms of business.

However, as was the case with the complaint in *Bonanno*, the "injunctive relief requested [here] differs from that specifically contemplated" by Section 1964(a) "in that ... it would enjoin association among specific individuals" and corporations. *Bonanno*, 683 F.Supp. at 1441. And, as in *Bonanno*, the defendants here argue that such injunctions would deny them certain constitutional rights of free association and of free speech. Again, however, the opinion of this court in *Bonanno* is dispositive on this point:

> The defendants may well be able to raise a weighty constitutional challenge to the injunctive relief sought by the government. The challenge, however, is premature at this stage in the proceedings. The availability of any injunctive relief will depend on the government's proof, and the Court has broad equitable powers under 18 U.S.C. § 1964 to fashion any injunctive relief to avoid constitutional infirmities.

*Id.* at 1441–42. As indicated above, the complaint may only be dismissed if there is *no* relief which may be granted on the stated claims. Thus, "[t]he *possible* constitutional defects of th[is] injunctive relief ... do not constitute grounds for dismissing" the complaint. *Id.* at 1442 (emphasis added).

### C. *Divestiture and Disgorgement*

 Finally, the first forty-six claims for relief request that the defendants be ordered "to divest themselves" of their interests in the RICO enterprises through which they are alleged to have violated Section 1962. Complaint ¶¶ 204 (PSIA enterprise), 209 (carting industry enterprise), 214 (Local 813 enterprise), 220 (corporate enterprises), 225 (PSIA enterprise), and 229 (carting industry enterprise). Again, the complaint elsewhere more fully sets forth the precise relief sought in this regard. That is, the government requests that the court:

> (1) [O]rder the defendants to divest themselves of any interest, direct or indirect, which they hold in the Corporate Enterprises, the PSIA Enterprise, the Carting Industry Enterprise, or the Local 813 Enterprise at the time of the filing of this complaint, or which they acquire at any time thereafter; (2) order that all proceeds from said divestiture order be deposited in a fund for innocent victims of the racketeering acts and activities as alleged in the instant action; (3) order that restitution be awarded to the innocent victims in a manner deemed appropriate by the Court; (4) order that all proceeds not otherwise awarded as restitution to innocent victims of the racke-

teering acts and activities be deposited in the United States Treasury or otherwise awarded to plaintiff; and (5) order that an Administrator approved by the Court administer the receipt and disbursements of the proceeds of said fund.

Complaint "Wherefore" Clause ¶ I. The defendants challenge this relief on the grounds that, because it seeks to require the defendants to dispose of their interests in the enterprises and to surrender the proceeds of those dispositions to the control of the government, the relief actually seeks forfeiture rather than divestiture and that, as such, it seeks a remedy that is unavailable in a civil RICO action.

As indicated above, Section 1964(a) authorizes civil RICO remedies "including, but not limited to ... ordering any person to divest himself of any interest, direct or indirect, in any enterprise...." By contrast, 18 U.S.C. § 1963(a) provides, as a criminal penalty, that any person who violates Section 1962 "shall forfeit to the United States":

(1) any interest the person has acquired or maintained in violation of section 1962;

(2) any—

(A) interest in;

(B) security of;

(C) claim against; or

(D) property or contractual right of any kind affording a source of influence over;

any enterprise which the person has established, operated, controlled, conducted, or participated in the conduct of, in violation of section 1962; and

(3) any property constituting, or derived from, any proceeds which the person obtained, directly or indirectly, from racketeering activity or unlawful debt collection in violation of section 1962.

Thus, whereas the RICO statute envisions forfeiture as a criminal penalty, it provides for divestiture as a civil remedy. Clearly, the government may not obtain from these defendants the criminal penalty of forfeiture simply by denoting the relief sought to be the civil remedy of divestiture.

This court has had occasion before to consider the relationship of forfeiture to divestiture under civil RICO. In *Bonanno*, this court observed that requiring a defendant to divest himself of his interest in a RICO enterprise is clearly established as an available civil remedy by Section 1964(a). *Bonanno*, 683 F.Supp. at 1448. However, divestiture contemplates that a defendant will receive compensation for the interest of which he disposes. *Id.* Accordingly, to the extent that the government seeks an "order that all proceeds from [the requested] divestiture[s] be" deposited into a restitution fund or otherwise surrendered to the United States, complaint "wherefore" clause ¶ I(2), the relief sought is not mere divestiture.

Nonetheless, divestiture is not the exclusive civil remedy available to the government under Section 1964(a). For example, "it [is] within the broad equitable powers of the Court to fashion relief requiring the defendants *to disgorge* any ill-gotten gains." *Id.* at 1449 (emphasis added). Unlike divestiture, disgorgement does entail a surrender without compensation. Therefore, should the proof offered by the government so merit, the "defendants could conceivably be ordered to disgorge ... any proceeds derived from the unlawful conduct of or participation in" the affairs of the alleged enterprises. *Id.* However, "[a]ny such relief would be dependent upon the government's ability to prove that the proceeds sought to be disgorged were 'ill-gotten' under the RICO statute." *Id.* For this reason, the relief as requested by the government—that the defendants divest themselves of their *entire* interests in the enterprises and surrender "*all* proceeds from said divestiture[s]"—may well prove to be impermissibly broad: "The government would not be entitled to an order depriving, without compensation, the defendants of their entire interest in the enterprises at issue regardless of whether the property interest is tainted." *Bonanno*, 683 F.Supp. at 1449. Such an order would amount to an order of forfeiture, not of divestment or of disgorgement, and would therefore impose a criminal penalty under the guise of civil relief.

Thus, subject to the discretion of the court in the exercise of its equitable powers after a review of the proof presented by the government, the remedy of divestiture (with compensation) of a defendant's interest in a RICO enterprise and the remedy of disgorgement (without compensation) of the ill-gotten proceeds of racketeering activity may both be appropriately ordered as measures of relief for the government. However, the remedy of forfeiture of a defendant's entire interest in an enterprise—without a demonstration by the government that the entire interest constitutes tainted proceeds of racketeering activity—is inappropriate and unavailable in a civil RICO action.[45]

## V. OTHER ARGUMENTS AND MOTIONS RAISED BY DEFENDANTS

### A. *Statute of Limitations and Laches*

■ The defendants argue that this action is time barred both under the applicable statute of limitations and under the doctrine of laches. However, the four-year statute of limitations urged by the defendants to govern a civil RICO claim under *Agency Holding Corp. v. Malley–Duff & Associates*, 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987), would apply—if at all—only to that part of the complaint that seeks monetary relief; but that claim has already been dismissed. Further, as to the other forty-six claims for relief, "[t]he timeliness of an action [in equity] not covered by a particular statute of limitations is generally governed by the doctrine of laches." *Bonanno*, 683 F.Supp. at 1458. But the defense of laches is "not available as against the United States." *Id.* See also *United States v. International Brotherhood of Teamsters*, 708 F.Supp. 1388, 1402 (S.D.N.Y.1989) (statute of limitations and laches inapplicable to civil RICO action brought by government; *Malley–Duff* in-

apposite). Accordingly, there is no time bar to this action.

### B. *Double Jeopardy*

■ Several of the defendants argue that this action is barred as violative of the Double Jeopardy Clause of the Fifth Amendment to the federal Constitution. See, e.g., Memorandum of Unique Sanitation at 77–82. They observe that the conduct charged in this complaint was, in many cases, the object of earlier criminal prosecutions by the State of New York. See, e.g., Exhibits A–J to Complaint (ten New York State indictments against many defendants named in this action). Although this is a civil proceeding, the defendants refer this court to *United States v. Halper*, 490 U.S. 435, 449, 109 S.Ct. 1892, 1902, 104 L.Ed.2d 487 (1989):

> [A civil proceeding may violate the Double Jeopardy Clause] where a defendant previously has sustained a criminal penalty and the civil penalty sought in the subsequent proceeding bears no rational relation to the goal of compensating the Government for its loss, but rather appears to qualify as "punishment" in the plain meaning of the word....

However, the position of the defendants overlooks "the well-established principle that a federal prosecution does not bar a subsequent state prosecution of the same person for the same acts, and a state prosecution does not bar a federal one." *United States v. Wheeler*, 435 U.S. 313, 316–17, 98 S.Ct. 1079, 1082–83, 55 L.Ed.2d 303 (1978). Thus, even if the defendants could persuade this court that the rationale of *Halper* were applicable to this case, the doctrine of dual sovereigns would place this complaint beyond the reach of the Double Jeopardy Clause of the Fifth Amendment.

### C. *The Tenth Amendment*

■ Three defendants (Sail Carting, Edward DeMatteo, and Ernest DeMatteo) ar-

---

**45.** The defendant Joseph Pezza has argued that he is immune from this RICO "prosecution." Although he recognizes that this suit is styled as a civil action, he argues that the remedy sought by the government—"complete divestiture without compensation"—transforms this into a "qua-

si-criminal" matter. Memorandum of Joseph Pezza at 51. However, because the court has determined that the criminal penalty of forfeiture is unavailable to the government in this action, it is unnecessary for the court to consider Pezza's claim of immunity.

gue that this action is precluded by the Tenth Amendment to the Federal Constitution. That amendment provides:

> The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people.

The defendants argue that the regulation of the solid waste industry is "a customary area of local concern long reserved to state and local governments by practice, tradition and legal precedent." *Hybud Equipment Corp. v. City of Akron, Ohio,* 654 F.2d 1187, 1196 (6th Cir.1981), *judgment vacated,* 455 U.S. 931, 102 S.Ct. 1416, 71 L.Ed.2d 640 (1982). Accordingly, they argue, the Tenth Amendment prohibits the federal government from regulation of the Long Island carting industry through the RICO statute.

However, the "traditional state governmental functions" test has been invalidated by the Supreme Court. *Garcia v. San Antonio Metropolitan Transit Authority,* 469 U.S. 528, 546–47, 105 S.Ct. 1005, 1015–16, 83 L.Ed.2d 1016 (1985). Rather:

> [T]he fundamental limitation that the constitutional scheme imposes on the Commerce Clause to protect the "States as States" is one of process rather than one of result. Any substantive restraint on the exercise of Commerce Clause powers must find its justification in the procedural nature of this basic limitation, and it must be tailored to compensate for possible failings in the national political process rather than to dictate a "sacred province of state autonomy."

*Id.* at 554, 105 S.Ct. at 1019 (quoting *EEOC v. Wyoming,* 460 U.S. 226, 236, 103 S.Ct. 1054, 1060, 75 L.Ed.2d 18 (1983)). Because the challenge raised by the defendants in this case is not a challenge to the "federal political process", the relevant question is whether the provisions of RICO, as sought to be applied in this case, would be "destructive of state sovereignty." *Id.* The defendants argue that this application of RICO is destructive of the sovereignty of the state of New York, but they do so only to the extent that the regulation of the solid waste disposal is a "traditional state governmental function." See Memorandum of Sail Carting at 30–35. In other words, the defendants argue that this application of RICO is "destructive of state sovereignty" *because* it interferes with a matter "traditionally" relegated to the state police power. But this is precisely the position that was rejected by the Court in *Garcia;* as such, it is inadequate to defeat the complaint in this case.

### D. *Preemption by Federal Labor Law*

■■■ The defendant Local 813 argues that this action is barred as against it because the Labor–Management Reporting and Disclosure Act, 29 U.S.C. §§ 401 et seq. ("LMRDA") and the National Labor Relations Act, 29 U.S.C. §§ 151 et seq. ("NLRA") divest this court of jurisdiction to grant the relief sought by the government against Local 813. However, this argument is predicated on a misreading of the complaint by Local 813:

> It is critical to an understanding of the Complaint against the Union that no Claim for Relief or Injunctive Remedy deals in any way with the predicate acts alleged to have been committed by the Union. Nowhere does the government pray for a cease and desist order against the Union enjoining it from its alleged RICO violations.... Instead[,] the total thrust of the prayer for relief commencing at page 113 of the Complaint as it affects the Union deals solely with who can or cannot become members of the Union, who may or may not be an officer of the Union or a member of its Executive Board and who may or may not participate in its pension funds.

Memorandum of Local 813 at 36. Thus, Local 813 argues that the government does not seek relief under RICO against Local 813 as such; rather, the union argues, the government seeks indirectly to control certain aspects of the activities of Local 813 by virtue of the RICO violations of other named defendants. However, Local 813 argues, these activities of Local 813 sought to be regulated—its membership, its governance, and its pension funds—may only be brought under federal control through the LMRDA and through the NLRA.

Implicit in this argument of Local 813, however, is the prudent concession that, if the complaint does seek to correct RICO violations by the union itself, the provision of the LMRDA and of the NLRA do not preclude application of RICO. See *International Brotherhood of Teamsters*, 708 F.Supp. at 1394 ("Put another way, the alleged deprivation of union rights are symptoms; the complaint in this case alleges a widespread disease in the Union. The [LMRDA and the NLRA] are designed to treat these symptoms. RICO was enacted by Congress specifically to cure the disease."). See also *Local 1814, International Longshoremen's Association, AFL–CIO v. New York Shipping Association, Inc.*, 965 F.2d 1224 (2d Cir.1992) (Section 1964(c) overrides prohibition in Norris–LaGuardia Act against issuance of injunction in case involving labor dispute). In this case—notwithstanding the misreading of the complaint by Local 813—the government does seek direct equitable relief against the union for its own alleged RICO violations. See Complaint ¶ 209 (seeking order that Local 813 "divest [itself] of any interest in the Carting Industry Enterprise"); "Wherefore" Clause ¶ B (seeking order that Local 813 be enjoined from future RICO violations); and "Wherefore" Clause ¶ F (seeking order that Local 813 be enjoined from association with members of organized crime and from association with any individual defendant "for any reason"). Therefore, the argument of Local 813 that federal labor law precludes this application of RICO is without merit. *International Brotherhood of Teamsters*, 708 F.Supp. at 1394.

### E. *Corporate Liability under Theory of Respondeat Superior*

■ Several defendants argue that RICO liability may not be imposed on the corporate defendants under a theory of re-

spondeat superior. See, e.g., Memorandum of Enviro Carting at 71. However, this court has previously considered and rejected such an argument:

> With respect to the issue of respondeat superior liability in the RICO context, the Court is persuaded that such liability in this factual setting is appropriate, notwithstanding the split of authority on the subject.... "[There is] nothing in RICO or its legislative history which would suggest that the normal rules of agency law should not apply to the civil liability created by that statute" and, indeed, ... "application of the doctrine[ ] of ... respondeat superior will, at least, in most instances, further the statutory goals."

*Connors v. Lexington Insurance Co.*, 666 F.Supp. 434, 453 (E.D.N.Y.1987) (quoting *Bernstein v. IDT Corp.*, 582 F.Supp. 1079, 1083–84 (D.Del.1984)). The defendants in this case suggest no sound basis on which this court should depart from its determination in *Connors*. Accordingly, the corporate defendants in this action may be held liable on a theory of respondeat superior.[46]

### F. *Severance of Defendants*

■ Several of the defendants also move for separate trials. See, e.g., Memorandum of Local 813 at 39. Federal Rules of Civil Procedure 20(b), 21, and 42(b) provide that a court "may" order separate trials as to parties or as to claims. The language of these rules ("*may*") clearly indicates that the order for severance is discretionary with the court. In this case, the motions of the defendants are simply premature: This action has not proceeded beyond the pleading stage, and the court is unable to sort out the intricacies of the relationships among the defendants at this time. Thus, the motions for severance are denied without prejudice.

---

**46.** The defendant Long Island Rubbish argues that it should be dismissed from this action because it "ceased operations and withdrew from the refuse removal business effective May 31, 1987." Memorandum of Long Island Rubbish at 5. However, New York Business Corporation Law Section 1006(b) provides that (subject to two exceptions inapplicable here) dissolu-

tion does not extinguish claims against a corporation. Thus, even if Long Island Rubbish had been dissolved—which does not appear to be the case—it could still be a party to this action. See, e.g., *Flute v. Rubel*, 682 F.Supp. 184, 186–87 (S.D.N.Y.1988) (under New York Business Corporation Law Section 1006(b), action may be maintained against dissolved corporation).

### G. *Motions to Strike Material in Complaint*

 Many defendants also move to strike certain portions of the complaint that allege associations of certain defendants with organized crime or that contain information about criminal charges previously brought against the defendants. See, e.g., Memorandum of Salem Carting at 50. Federal Rule of Civil Procedure 12(f) provides:

> Upon motion made by a party before responding to a pleading or ... upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

In this case, the court cannot conclude that the elements of the complaint sought to be stricken are "immaterial, impertinent, or scandalous matter." The allegations concerning connections between certain defendants and organized crime are central to the complaint in that this action is predicated on the contention of the government that the Long Island carting industry is corrupted by the Mafia. Moreover, the inclusion in the complaint of previous criminal charges and of previous criminal pleas are clearly offered by the government in order to fill out a factual basis—albeit a nebulous and largely undifferentiated one—for many of the alleged racketeering acts. As such, the matters sought to be removed from the complaint simply do not fall within the purview of Rule 12(f).

### H. *Motions for Summary Judgment*

 Several defendants have moved not only to dismiss the complaint under Rules 8(a) and 12(b)(6) but also for summary judgment under Federal Rule of Civil Procedure 56. See, e.g., Notice of Motion of Craig Comerford. The government has opposed these motions on the basis of Rule 56(f); that rule provides:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Here, the government argues that, because these motions for summary judgment were filed at the threshold of discovery, it cannot adequately respond to them. See Affidavit of Assistant United States Attorney David M. Nocenti. The court agrees with the government that the motions are premature. See, e.g., *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983) ("[C]aution should be exercised in granting summary judgment ... when the party opposing the motion has been denied relevant discovery."). Therefore, pursuant to Rule 56(f), the motions of the defendants for summary judgment are hereby denied without prejudice.

### I. *Claim and Issue Preclusion; Mootness*

Several of the defendants have argued that this action is precluded by certain civil suits brought by the State of New York and by the towns of Oyster Bay, New York and of Islip, New York; they also argue that settlement of those lawsuits renders this action moot. See, e.g., Memorandum of Detail Carting at 6–7 and Memorandum of PSIA at 50–52. Resolution of these arguments would require reference to matters outside the pleadings—such as the complaints and the settlement papers of those other actions. However, no determination was made pursuant to Rule 12(b) when these motions were submitted that the court would consider them as motions under Rule 56; and, even if such a determination had been made, the court would consider any motion for summary judgment to be premature. Accordingly, the claim and issue preclusion arguments raised by the defendants are denied without prejudice. Nonetheless, the court must observe that the fact of those other lawsuits does call into question any justification for this action. More specifically, the relief already obtained in those civil actions against many of these defendants—relief that includes injunctions against future criminal activity as well as substantial payments into victim-restitution funds—would appear to make this action a dubious use of

precious governmental and judicial resources.

## J. Constitutionality of RICO

◼ Many of the defendants have moved to dismiss the complaint on the ground that the pattern element of RICO renders that statute unconstitutionally vague. See, e.g., Memorandum of Salem Sanitary at 4–14 and Memorandum of Sail Carting at 57–62. Although the vagueness doctrine is implicated primarily by criminal statutes and although this case is civil in nature, the RICO statute "has criminal applications as well, [and it] must, even in its civil applications, possess the degree of certainty required for criminal laws...." H.J. Inc., 492 U.S. at 255, 109 S.Ct. at 2909 (Scalia, J., concurring in judgment) (citing FCC v. American Broadcasting Co., 347 U.S. 284, 296, 74 S.Ct. 593, 600, 98 L.Ed. 699 (1954)). There can be little doubt, then, that these civil defendants may challenge the constitutionality of RICO.

The Second Circuit, however, has consistently rejected arguments that RICO is unconstitutionally vague. See, e.g., Ruggiero, 726 F.2d at 923; Scotto, 641 F.2d at 52; United States v. Clemente, 640 F.2d 1069, 1081 (2d Cir.), cert. denied, 454 U.S. 820, 102 S.Ct. 102, 70 L.Ed.2d 91 (1981); United States v. Huber, 603 F.2d 387, 393 (2d Cir.1979), cert. denied, 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980); United States v. Parness, 503 F.2d 430, 440–42 (2d Cir.1974), cert. denied, 419 U.S. 1105, 95 S.Ct. 775, 42 L.Ed.2d 801 (1975). Those authorities control this case. Indeed, in United States v. Coiro, 922 F.2d 1008, 1017 (2d Cir.), cert. denied, — U.S. —, 111 S.Ct. 2826, 115 L.Ed.2d 996 (1991), the Second Circuit determined that the pattern element is clear in the context of defendants involved with organized crime:

> As RICO was plainly intended to encompass the illegal activities of organized crime ... we are confident that the statute provided [the defendant] with fair notice that his contemplated conduct—bribery and money laundering on behalf of [a] narcotics enterprise—fell within RICO's strictures, and thus the statute is

not unconstitutionally vague as applied to him.

Thus, in the view of the Second Circuit, even though "Congress specifically declined to make mere membership in an organized crime organization a RICO offense," Bonanno, 683 F.Supp. at 1429 (citing Moss, 719 F.2d at 21 n. 7), such membership in organized crime (or, as was the case in Coiro, association with organized crime) nonetheless provides the "relationship" and the "continuity" that are required to transform two acts of racketeering into a pattern of racketeering activity.

The breadth of the rationale of Coiro is clear: That is, because RICO was designed to prohibit the activities of the Mafia, any RICO defendants who are alleged to fall within the shadow of organized crime may not contend that the statute is unconstitutionally vague as applied to their conduct. In this case, the complaint alleges extensive interactions between these defendants and the Mafia; indeed, the complaint alleges that the carting industry on Long Island (in which all the defendants are participants) is "controlled ... by organized crime." Complaint ¶ 1. It is difficult to understand, then, how the far-reaching determination of Coiro would not control this case. See also United States v. Glecier, 923 F.2d 496, 497 n. 1 (7th Cir.) (RICO pattern not unconstitutionally vague), cert. denied, — U.S. —, 112 S.Ct. 54, 116 L.Ed.2d 31 (1991); United States v. Pungitore, 910 F.2d 1084, 1105 (3d Cir.1990) ("[W]e have doubts that a successful vagueness challenge to RICO could ever be raised by defendants in an organized crime case.") (rejecting vagueness challenge to pattern element), cert. denied, — U.S. —, 111 S.Ct. 2009, 114 L.Ed.2d 98 (1991); United States v. Angiulo, 897 F.2d 1169, 1180 (1st Cir.) ("A person of ordinary intelligence could not help but realize that illegal activities of an organized crime family fall within the ambit of RICO's pattern of racketeering activity."), cert. denied, — U.S. —, 111 S.Ct. 130, 112 L.Ed.2d 98 (1990).

Because Coiro and all the other Second Circuit cases that have upheld the constitutionality of RICO are binding on this court,

the constitutional challenge presented by these defendants must be rejected. However, were it not for the clear and consistent answer of the Second Circuit to this question, this court might have taken a different view of the matter.

As the Supreme Court stated long ago: "[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law." *Connally v. General Construction Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926). See also *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972) ("It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined."). Thus, a criminal law "must be one that carries an understandable meaning...." *Giaccio v. Pennsylvania*, 382 U.S. 399, 403, 86 S.Ct. 518, 521, 15 L.Ed.2d 447 (1966). And, yet, as the Court cautioned in *Grayned*, 408 U.S. at 110, 92 S.Ct. at 2299: "Condemned to the use of words, we can never expect mathematical certainty from our language."

This vagueness doctrine has two components. First, "because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Id.* at 108, 92 S.Ct. at 2298. That is, a penal statute must provide the ordinary citizen with adequate notice of what it proscribes. See also *Maynard v. Cartwright*, 486 U.S. 356, 361, 108 S.Ct. 1853, 1857, 100 L.Ed.2d 372 (1988) ("Objections to vagueness under the Due Process Clause rest on the lack of notice, and hence may be overcome in any specific case where reasonable persons would know that their conduct is at risk."); *United States v. Harriss*, 347 U.S. 612, 617, 74 S.Ct. 808, 811, 98 L.Ed. 989 (1954) ("The constitutional requirement of definiteness is violated by a criminal statute that fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the stat-

ute."); *Lanzetta v. New Jersey*, 306 U.S. 451, 453, 59 S.Ct. 618, 619, 83 L.Ed. 888 (1939) ("No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids.").

Second, "a vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application." *Grayned*, 408 U.S. at 108–09, 92 S.Ct. at 2298–99. For this reason, "laws must provide explicit standards for those who apply them." *Id.* See also *Roberts v. United States Jaycees*, 468 U.S. 609, 629, 104 S.Ct. 3244, 3255, 82 L.Ed.2d 462 (1984) ("The requirement that government articulate its aims with a reasonable degree of clarity ensures that state power will be exercised only on behalf of policies reflecting an authoritative choice among competing social values, reduces the danger of caprice and discrimination in the administration of the laws, ... and permits meaningful judicial review."); *Giaccio*, 382 U.S. at 402–03, 86 S.Ct. at 520–21 ("It is established that a law fails to meet the requirements of the Due Process Clause if it is so vague and standardless that it leaves ... judges and jurors free to decide, without any legally fixed standards, what is prohibited and what is not in each particular case."). Moreover, although the vagueness doctrine implicates both "actual notice" and "arbitrary enforcement," the latter is the "more important aspect of the ... doctrine." *Kolender v. Lawson*, 461 U.S. 352, 358, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983). Thus, "[w]here the legislature fails to provide ... minimal guidelines, a criminal statute may permit 'a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections.'" *Id.* (quoting *Smith v. Goguen*, 415 U.S. 566, 575, 94 S.Ct. 1242, 1248, 39 L.Ed.2d 605 (1974)).

As a general proposition, one may only challenge a criminal law as facially vague if the law implicates freedoms guaranteed by the First Amendment. *United States v.*

*Mazurie*, 419 U.S. 544, 550, 95 S.Ct. 710, 714, 42 L.Ed.2d 706 (1975) ("It is well established that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined *in the light of the facts of the case at hand.*") (emphasis added). Or to state the limitation in the negative, a defendant "who engages in some conduct that is clearly proscribed" generally may not "complain of the vagueness of the law as applied to the conduct of others." *Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 495, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982). And, yet, "[a] law that does not reach constitutionally protected conduct ... may nevertheless be challenged on its face [if it] is impermissibly vague in *all* of its applications." *Id.* at 497, 102 S.Ct. at 1193. The test, then, for facial vagueness outside the context of the First Amendment is obviously a stringent one:

> If any fool would know that a particular category of conduct would be within the reach of the statute, if there is an unmistakable core that a reasonable person would know is forbidden by the law, the enactment is not unconstitutional on its face and should not be vulnerable to a facial attack....

*Lawson*, 461 U.S. at 370–71, 103 S.Ct. at 1865–66 (White, J., dissenting).

Thus, in this case, the defendants would only be able to mount their challenge to the vagueness of RICO as it is applied to their own conduct—unless the pattern element is impermissibly vague in all its applications. But to state that a statute is not vague "in all its applications"—that it has an "unmistakable core" that is clear to the person of ordinary intelligence—is to conclude that, as applied in at least one conceivable instance, the statute sets forth standards that violate neither the notice aspect nor the arbitrary enforcement aspect of the vagueness doctrine. However, if a statute provides *no* objectively fixed standards at all—if its norms require guesswork on the part of citizens or facilitate official application "on an *ad hoc* and subjective basis"—the statute violates the Due Process Clause on its face.

"Pattern" as used in RICO requires "continuity plus relationship" of predicate acts. *H.J. Inc.*, 492 U.S. at 239, 109 S.Ct. at 2900. Two RICO predicates are "related" if they " 'have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.' " *Id.* at 240, 109 S.Ct. at 2901 (quoting 18 U.S.C. § 3575(e)). On its face, the "relatedness" component of pattern provides no "legally fixed standards." First, if two predicate acts are related because they involve the same "participants," *any* two predicate acts committed by the same person are "related." But this cannot be the case: Relatedness is said to be a requirement of the pattern element beyond the mere fact of commission of two predicate acts by one person. See *id.* at 239, 109 S.Ct. at 2900. Either the "same participants" factor brings within the scope of relatedness every pair of predicate acts committed by any one person, or that factor means something other than what it appears to mean.

Next, two predicate acts are said to be "related" if they have the "same or similar purposes, results, ... victims, or methods of commission...." Although "victims" and "methods of commission" may be comparatively precise in meaning (but see *id.* at 252, 109 S.Ct. at 2907 (Scalia, J., concurring in judgment)), "purposes" and "results" are not. As with a "scheme", the "purpose" or the "result" of a criminal act "is in the eye of the beholder" because the content of the "purpose" or of the "result" depends on the level of generality at which criminal activity is viewed. *Id.* at 241 n. 3, 109 S.Ct. at 2901 n. 3. That is, if the purpose of one act of extortion is considered to be gaining entrance into a criminal enterprise and the purpose of another act of extortion is considered to be the intimidation of the victim, the acts are unrelated. But if the purposes of the same two acts are understood to be the obtaining of property (a necessary element of every act of extortion), the two acts are related. No better statement of the emptiness of this concept could be offered than that of the court in *Procter & Gamble*, 879 F.2d at

17: " 'Relatedness' means ... that there is *a way* in which the acts may be viewed as having a common purpose" (emphasis added). Thus, in order to know what conduct is proscribed, a potential defendant must conceive of every possible fashion in which his two predicates could be construed; and in order to determine whether a RICO violation has or has not occurred, a prosecutor, a judge, or a jury need only indulge the vagaries of the human imagination. The definition of relatedness simply provides no standard as to how these indices of relatedness are to be evaluated; rather, the evaluation of these factors is left to "judges and juries for resolution on an *ad hoc* and subjective basis." The potential for arbitrariness of enforcement is significant, and the inadequacy of fair notice is patent.

Finally, two acts are also related if they are "otherwise ... interrelated by distinguishing characteristics and are not isolated events." This is vacuous and circular; it adds nothing to that which precedes it, and it provides not even a first approximation of a "legally fixed standard[ ]." As such, the relatedness aspect of the pattern element entirely lacks an "understandable meaning." Because it provides no point of reference, it provides no "core" that a reasonable person would recognize as falling within its ambit. Rather, the definition of "relatedness" leaves open the level of generality at which such factors as "purposes" and "results" are to be evaluated; further, it provides at least one factor—"same participants"—which encompasses *every* commission of two predicate acts by one person. As such, the relatedness prong fails to give adequate notice of what it prohibits, and it promotes arbitrary enforcement and application. Insofar as it is required by the pattern element of RICO, *H.J. Inc.*, 492 U.S. at 239, 109 S.Ct. at 2900, it renders that statute unconstitutionally vague.

Next, " '[c]ontinuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id.* at 241, 109 S.Ct. at 2902. As demonstrated by Justice Scalia, *every* pair of predicate acts may be said to fall within a "closed period of repeated conduct." *Id.* at 253, 109 S.Ct. at 2907 (Scalia, J., concurring in judgment). A "closed period" is established by virtue of the fact that, at the time the RICO action is brought, the relevant conduct is past. And the conduct must necessarily be "repeated"—otherwise, there would not be the requisite two predicate acts. Thus, this half of the continuity test adds nothing to the element of pattern that is not inherent in the requirement of two predicate acts; again, a reasonable person could not possibly apply this concept to his own conduct with even the remotest sense of certainty.

The other half of the continuity test is that of "past conduct that by its nature projects into the future with a threat of repetition." The Court does not indicate what a "threat of repetition" may be; however, the Court does provide examples of a "threat of continuity," and one is left to assume that the two concepts are substantially similar. A "threat of continuity" may be a "distinct threat of long-term racketeering activity, either implicit or explicit." *Id.* at 242, 109 S.Ct. at 2902. Or, a "threat of continuity may be established by showing that the predicate acts or offenses are part of an ongoing entity's regular way of doing business." *Id.* This, the Court indicates, implicates "associations ... traditionally grouped under the phrase 'organized crime.' " *Id.* at 243, 109 S.Ct. at 2902–03. By contrast, the "continuity requirement is likewise satisfied where it is shown that the predicates are a regular way of conducting defendant's ongoing legitimate business...." *Id.* In other words, a threat of continuity includes "a distinct threat of long-term ... activity" or "a regular way of conducting a criminal (or a legitimate) business." None of these "examples" provides the first hint as to what "continuity" may be; none of these examples indicates in the least what conduct is prohibited or how the RICO statute is to be enforced. And "[w]hat is included beyond these examples is vaguer still." *Id.* at 254, 109 S.Ct. at 2908 (Scalia, J., concurring in judgment).

Indeed, the simple fact that the Court in *H.J. Inc.* indicated that "continuity" is a necessary sub-element of the pattern element but nonetheless refused *to define* the term—"preferring to deal with this issue in the context of concrete factual situations presented for decision," *id.* at 242, 109 S.Ct. at 2902—demonstrates that the continuity requirement is hopelessly vague. It requires potential RICO defendants "at the peril of ... liberty [and] property to speculate as to the meaning" of the word as used by the Court for that statute; and, because it is so vague in its terms, it leaves itself open to the most arbitrary enforcement and application.

If there were any lingering doubt whether the provisions of the RICO pattern element are understandable by persons of ordinary intelligence, one need only review the case law that has followed *H.J. Inc.*[47] It somewhat understates the matter to observe, as has one court of appeals, that "a concrete definition for precisely what activity will constitute a 'pattern' for purposes of the RICO statute has eluded the federal courts." *U.S. Textiles, Inc. v. Anheuser-Busch Companies,* 911 F.2d 1261, 1266

(7th Cir.1990). See also *Thompson v. Paasche,* 950 F.2d 306, 310 (6th Cir.1991) ("The confusion caused by RICO's 'pattern' requirement has only been mildly alleviated by the Supreme Court's recent decision in [*H.J. Inc.*]...."). That the members of the federal judiciary in their collective wisdom are unable to construe or to apply in a uniform and coherent fashion the "pattern" element of RICO should establish in itself the constitutional infirmities of that statute. Compare, for example, the liberal RICO pleading rules set forth by the Second Circuit in *Procter & Gamble,* 879 F.2d at 16–17 (complaint must plead basis from which relationship and continuity "may" or "could be" inferred) with the remarks of the Seventh Circuit in *Hartz v. Friedman,* 919 F.2d 469, 472 (7th Cir.1990) ("Since the Supreme Court decided *H.J. Inc.,* the Seventh Circuit has not found patterns to exist in any civil RICO cases which have presented the issue."). To the extent that the courts of appeals have demonstrated a genuine inability to determine what "particular category of conduct would be within the reach of the statute," it seems unlikely that "any fool" would be able to identify such

---

**47.** See, e.g., *United States v. Church,* 955 F.2d 688, 694 (11th Cir.1992) (two sales of cocaine in three months constitute pattern); *Thompson v. Paasche,* 950 F.2d 306, 310–11 (6th Cir.1991) (acts of fraud in sale of nineteen lots of real estate not a pattern); *Feinstein v. Resolution Trust Corp.,* 942 F.2d 34, 44–45 (1st Cir.1991) (two "episodes" of fraud over two years not a pattern); *Ticor Title Insurance. Co. v. Florida,* 937 F.2d 447, 450 (9th Cir.1991) (three "episodes" of forgery over thirteen months constitute pattern); *United States v. Busacca,* 936 F.2d 232, 237–38 (6th Cir.) (six acts of embezzlement over two and one half months constitute pattern), *cert. denied,* —— U.S. ——, 112 S.Ct. 595, 116 L.Ed.2d 619 (1991); *J.D. Marshall International, Inc. v. Redstart, Inc.,* 935 F.2d 815, 820–21 (7th Cir.1991) (numerous acts of mail fraud and of wire fraud over thirteen months "not the stuff of a pattern ..."); *Pyramid Securities Ltd. v. IB Resolution, Inc.,* 924 F.2d 1114, 1117 (D.C.Cir.) (securities fraud scheme lasting three months not a pattern), *cert. denied,* —— U.S. ——, 112 S.Ct. 85, 116 L.Ed.2d 57 (1991); *Banks v. Wolk,* 918 F.2d 418, 422–23 (3d Cir.1990) (multiple acts of fraud in single development project not a pattern); *United States v. Woods,* 915 F.2d 854, 863 (3d Cir.1990) (repeated acts of bribery over four years constitute pattern), *cert. denied,* —— U.S. ——, 111 S.Ct. 1413, 113 L.Ed.2d 466 (1991); *U.S. Textiles, Inc. v. Anheu-*

*ser–Busch Companies,* 911 F.2d 1261, 1267–69 (7th Cir.1990) ("considerable number" of acts of mail fraud and of wire fraud over two years without "'more significant social threat'" not a pattern); *Short v. Belleville Shoe Manufacturing Co.,* 908 F.2d 1385, 1393 (7th Cir.1990) (four acts of fraud over several months not a pattern), *cert. denied,* —— U.S. ——, 111 S.Ct. 2887, 115 L.Ed.2d 1052 (1991); *Lincoln House, Inc. v. Dupre,* 903 F.2d 845, 846–47 (1st Cir.1990) (six acts of mail fraud over two years not a pattern); *Morley v. Cohen,* 888 F.2d 1006, 1010–11 (4th Cir.1989) (several acts of mail and wire fraud over six years constitute pattern); *Parcoil Corp. v. Nowsco Well Service, Ltd.,* 887 F.2d 502, 504 (4th Cir.1989) (seventeen acts of mail fraud over four months not a pattern); *United States v. Kaplan,* 886 F.2d 536, 542–44 (2d Cir.1989) (two bribes over several years constitute pattern), *cert. denied,* 493 U.S. 1076, 110 S.Ct. 1127, 107 L.Ed.2d 1033 (1990); *Shearin v. E.F. Hutton Group, Inc.,* 885 F.2d 1162, 1166 (3d Cir.1989) (allegations of securities fraud and of mail fraud over two years plead pattern); *Official Publications, Inc. v. Kable News Co.,* 884 F.2d 664, 668 (2d Cir.1989) ("repeated" acts of mail fraud over "considerable" time period constitute pattern); and *Swistock v. Jones,* 884 F.2d 755, 758 (3d Cir.1989) (allegations of several acts of mail fraud over fourteen months in single development project plead pattern).

an "unmistakable core." Cf. *Lawson*, 461 U.S. at 370–71, 103 S.Ct. at 1865–66 (White, J., dissenting). In the last analysis, the Supreme Court itself has offered perhaps the most insightful critique of the constitutionality of the pattern element:

> The limits of the relationship and continuity concepts that combine to define a RICO pattern, and the precise methods by which relatedness and continuity or its threat may be proved, cannot be fixed in advance with such clarity that it will always be apparent whether in a particular case a "pattern of racketeering activity" exists.

*H.J. Inc.*, 492 U.S. at 243, 109 S.Ct. at 2902–03.

## CONCLUSION

For the reasons set forth above, the motions of the defendants to dismiss the complaint are granted in part and denied in part. All racketeering acts that are pleaded under the New York coercion statute or as "grand larceny ... involving bribery" are dismissed with prejudice. All substantive RICO counts as pleaded are dismissed with prejudice as against the defendants AA & M Carting, C & C Carting, Michael Acquafredda, Michael Malena, Robert Renna, and Glenn Thweatt; the substantive RICO counts are dismissed without prejudice as against the defendant Pat Sesti. Both RICO conspiracy counts are dismissed without prejudice as against all defendants. The claim for monetary damages is dismissed with prejudice. All other motions of the defendants—including their challenge to the constitutionality of the RICO pattern element—are denied.

SO ORDERED.